Exhibit A

## Michael Bekesha

| | |
|---|---|
| **From:** | Michael Bekesha |
| **Sent:** | Monday, June 22, 2015 5:10 PM |
| **To:** | Wechsler, Peter (CIV) (Peter.Wechsler@usdoj.gov) |
| **Subject:** | JW v State (13-1363) |

Peter –

As we stated in our Motion, we did not originally challenge the State Department's final determination because the agency had represented that it had searched, in particular, the Office of the Executive Secretariat, where records of Secretary Clinton and Ms. Abedin were most likely to be found. Therefore, our proposal relates to issues concerning the search conducted of the Office of the Executive Secretariat.

The FOIA request at issue concerns records about Ms. Huma Abedin's classification as a special government employee. Before being classified as such, Ms. Abedin was Secretary Clinton's Deputy Chief of Staff. Therefore, as part of any search reasonably calculated to uncover all responsive records, at a minimum, the email records of Secretary Clinton, Ms. Abedin, and Ms. Cheryl Mills, Secretary Clinton's Chief of Staff at the time, should have been searched. Based on Secretary Clinton's own admissions and statements by the State Department, it is indisputable that Secretary Clinton's email records were not searched for responsive records. In addition, based on reporting by numerous news organizations, it appears as though some, if not all, of the email records of Ms. Abedin and Ms. Mills were not searched.

When the State Department conducted its searches for responsive records in early 2014, it is implausible that the State Department did not know that the records of the Office of the Executive Secretariat were missing email records of Secretary Clinton, Ms. Abedin, and Ms. Mills. In other words, the State Department knew that the system of records it was searching was incomplete. To avoid a similar situation now that the case has been reopened, Judicial Watch proposes the following:

Before any meaningful discussion about potential searches can occur, Plaintiff suggests that the State Department provide the following limited, but necessary, information:

1.   Identify the number of non-"state.gov" email addresses that Secretary Clinton, Ms. Abedin, and Ms. Mills used to conduct official government business;

2.   Identify the actual email addresses that Secretary Clinton, Ms. Abedin, and Ms. Mills used to conduct official government business;

3.   Identify all devices (desktop computers, laptop computers, tablets, iPads, Blackberries, smart phones, etc.) that Secretary Clinton, Ms. Abedin, and Ms. Mills used to conduct official government business;

4.   Identify how Ms. Abedin and Ms. Mills records-managed those email addresses (Secretary Clinton has acknowledged that she records-managed her email records by emailing government officials on their ".gov" email addresses);

5.   Whether any of the devices used by Secretary Clinton, Ms. Abedin and Ms. Mills to conduct official government business exist and/or whether any disk image, clone, duplication or backups of such devices exist;

6.   Whether the server used to send, receive, store, and/or index the email records of Secretary Clinton, Ms. Abedin and Ms. Mills exist and/or whether any disk image, clone, duplication or backup of such server exist;

7.   Whether the State Department has the technology to search its email servers globally for a keyword or whether the State Department's technology requires it to conduct keyword searches of each email account individually; and

8.     Whether the State Department has taken any efforts to secure email records of Secretary Clinton, Ms. Abedin, and Ms. Mills that may not be readily available to it.

Once Plaintiff receives this information, the parties can discuss the next steps, including what searches would be reasonably calculated to uncover all responsive records. Until both parties have this information, it will be difficult, if not impossible, for us to have productive discussions or to reach an agreement concerning the searches.

With respect to a schedule, Judicial Watch proposes that the State Department provide the above-identified information to Plaintiff by July 20, 2015. The parties then can meet and confer and provide the Court with a status of their discussions by August 3, 2015, including whether the parties have reached an agreement as to the searches to be conducted and, if so, when those searches will be completed. If the parties have not or cannot reach an agreement, each party can set forth their individual recommendations for how the case should proceed.

Please let me know if you have any questions.  I look forward to discussing this proposal with you.

Thank you.
mb

Michael Bekesha
Judicial Watch, Inc.
mbekesha@judicialwatch.org
202.646.5172

Exhibit B

## Michael Bekesha

| | |
|---|---|
| **From:** | Wechsler, Peter (CIV) <Peter.Wechsler@usdoj.gov> |
| **Sent:** | Tuesday, June 30, 2015 4:55 PM |
| **To:** | Michael Bekesha |
| **Subject:** | FW: JW v State (13-1363) |

Michael,

Thanks for your email. The State Department disagrees with plaintiff's proposal for further proceedings in this case, which consists of plaintiff posing a series of interrogatories to the State Department about various record keeping issues. The posing of such interrogatories clearly exceeds the Department's obligations in this FOIA case. FOIA "deals with 'agency records,' not information in the abstract." Goldgar v. Office of Admin., 26 F.3d 32, 34 (5th Cir. 1994) (citing Forsham v. Harris, 445 U.S. 169 (1980)). For that reason, FOIA "does not require an agency to answer questions disguised as a FOIA request, or to create documents or opinions in response to an individual's request for information." Hudgins v. IRS, 620 F. Supp. 19, 21 (D.D.C. 1985) (citations omitted). If a party "is not seeking an agency record – the only thing accessible under the FOIA – then he is abusing and misusing the FOIA." Goldgar, 26 F.3d at 35. In addition, the extensive information plaintiff seeks by way of interrogatories exceeds the scope of plaintiff's limited FOIA request for certain personnel records regarding Ms. Abedin's employment.

The focus of any further proceedings should be on the 55,000 pages of emails that were recently provided to the Department by former Secretary Clinton from a non-'state.gov' account. Accordingly, the Department proposes to conduct a search of these emails for any records responsive to plaintiff's FOIA request as these emails are posted on the Department's website pursuant to the rolling production schedule ordered by the court in Leopold v. State, C. A. No. 15-cv-123 (RC) (ECF No. 17). More specifically, the Department proposes that it produce any non-exempt records from the Clinton emails that are responsive to plaintiff's FOIA request within two weeks of each rolling production of the Clinton emails. Because the last date for rolling productions is January 29, 2016, plaintiff will have been provided with all responsive, non-exempt records from the Clinton emails within approximately six months.

In addition, the Department has sent letters to Ms. Abedin and Ms. Mills, requesting that those individuals make available to the Department any federal records that they may have in their possession, such as emails concerning official government business sent or received on a personal email account while serving in their official capacities with the Department, if there is any reason to believe that those records may not otherwise be preserved in the Department's recordkeeping system. The Department proposes to search such records received, as well, for any additional records responsive to the FOIA request.

Please let me know if you have any questions about the Department's proposal for further proceedings in this case.

Regards,

Peter

Peter T. Wechsler
**U.S. Department of Justice**
Civil Division, Federal Programs Branch
(202) 514-2705

**Exhibit C**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JASON LEOPOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-000123-RC |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF JOHN F. HACKETT

Pursuant to 28 U.S.C. § 1746, I, John F. Hackett, declare and state as follows:

1.      I am the Acting Director of the Office of Information Programs and Services

("IPS") of the United States Department of State (the "Department").  In this capacity, I am the

Department official immediately responsible for responding to requests for records under the

Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. §

552a, and other applicable records access provisions.  I have been employed by the Department

in this capacity since March 2014.  Prior to assuming this role, I served as the Deputy Director of

IPS since April 2013.  As the acting IPS Director, I am authorized to classify and declassify

national security information.  I make the following statements based upon my personal

knowledge, which in turn is based upon a personal review of the records in the case file

established for processing the subject request and upon information furnished to me in the course

of my official duties.  I am familiar with the efforts of Department personnel to process the

subject requests, and I am in charge of coordinating the agency's search and recovery efforts

with respect to those requests.

2.    The core responsibilities of IPS include: (1) responding to records access requests made by the public (including under the FOIA, the Privacy Act, and the mandatory declassification review requirements of the Executive Order governing classified national security information), by Members of Congress, by other government agencies, and those made pursuant to judicial process such as subpoenas, court orders, and discovery requests;[1] (2) systematic review under the Executive Order; (3) records management; (4) privacy protection; (5) national security classification management and declassification review; (6) corporate records archives management; (7) research; (8) operation and management of the Department's library; and (9) technology applications that support these activities.

3.    The purpose of this declaration is (i) to describe to the Court the Department's plan to review approximately 55,000 pages of e-mails and attachments to those e-mails (the "55,000 pages") that former Secretary of State Hillary Clinton provided to the Department in December 2014 and to post the releasable portions of the 55,000 pages on the Department's website, and (ii) to provide a date by which the Department proposes to complete that review and production.

## I. ADMINISTRATIVE PROCESSING OF PLAINTIFF'S REQUEST

4.    On November 14, 2014, plaintiff Jason Leopold submitted a FOIA request to the Department seeking every record prepared or maintained by the Department that mentions or refers to, or was prepared by, former Secretary of State Hillary Clinton, or anyone in the Office

---

[1] For example, in FY 2014, the Department received over 19,000 FOIA requests. Additionally, the Department has received nearly 14,000 new requests since October 2014 and is currently engaged in nearly 80 FOIA litigation cases, many of which involve court-ordered document production schedules. The Department's FOIA office is staffed with 63.5 fulltime employees to address these numerous FOIA requests and appeals, as well as FOIA litigation.

of the Secretary, for her entire tenure in office (Jan. 21, 2009 – Feb. 1, 2013). Plaintiff also requested a fee waiver and expedited processing of the request.

5.   On November 24, 2014, IPS acknowledged receipt of Plaintiff's FOIA request, granted Plaintiff's request for a fee waiver, and denied his request for expedited processing.

6.   On January 7, 2015, IPS reached out to Mr. Leopold in an effort to discuss the possibility of narrowing the scope of his broad, sweeping request, explaining that his request would include hundreds of thousands of documents. In addition, IPS explained that the retrieval, analysis, and review of only the documents in the most relevant office would require years to complete, even if IPS could utilize the full resources of the FOIA office to focus solely on this case.

7.   On January 16, 2015, Mr. Leopold advised IPS that he would narrow the scope of his request "by excluding any records that have already been made publicly available and basic media summaries."

8.   On January 25, 2015, Mr. Leopold filed suit against the Department because it had not responded to his request within the statutory time period.

9.   As detailed in the parties' Joint Status Report Regarding Schedule ("Jt. Status Report") filed on March 20, 2015, the Department engaged in further negotiations with Plaintiff regarding the scope of his request and noted that the Department was already in the process of reviewing for posting on the Department's FOIA website the releasable portion of the 55,000 pages covering the period 2009-2013 that had been provided to the Department by former Secretary Clinton. The Department noted that this public release would substantially satisfy Plaintiff's request. At a Status Conference on April 8, 2015, the Court ordered the Department

*Leopold v. U.S. Dep't of State*
1:15-cv-000123-RC
Hackett Declaration

to provide a proposed schedule of production for Secretary Clinton's e-mails. *See* Order (April

28, 2015), ECF No. 10.

## II. DEPARTMENT'S PLAN FOR THE REVIEW OF FORMER SECRETARY CLINTON'S E-MAIL RECORDS

10.     In December 2014, former Secretary Clinton provided to the Department paper

copies of approximately 30,000 e-mails, comprising approximately 55,000 pages. Secretary

Clinton provided these records in response to a letter sent by the Department of State to former

Secretaries requesting that, if former Secretaries or their representatives were "aware or [were to]

become aware in the future of a federal record, such as an email sent or received on a personal

email account while serving as Secretary of State, that a copy of this record be made available to

the Department. . . if there is reason to believe that it may not otherwise be preserved in the

Department's recordkeeping system." *See* Ex. 1 (Text of Letter to Former Secretaries of State

Concerning the Federal Records Act of 1950).

11.     Given the considerable public interest in the 55,000 pages, the Department plans

to review the collection for public release, consistent with the FOIA, and make the releasable

portions of the 55,000 pages available to the public by posting them on the Department's FOIA

website. This will make the maximum number of records available to the public in the shortest

amount of time, and will be considerably more efficient than reviewing the documents

piecemeal, in response to multiple subject-specific FOIA requests.[2]  The Department intends to

---

[2] Although this case does not require a search of former Secretary Clinton's emails for responsive records because plaintiff's FOIA request is for *all* of her records, any orders issued in other cases requiring the Department to conduct case-specific searches of former Secretary Clinton's emails before the whole collection has been posted on the Department's website could slow down the Department's processing of the collection. Conducting such case-specific searches would take time and resources away from the broader review, the extent to which would depend on the breadth and complexity of those searches and FOIA requests. For that reason, the Department has taken the position that it would be more equitable to all requesters to avoid conducting case-specific searches until the entire collection has been processed, but has been ordered to do one discrete search in at least one case thus far. *Freedom Watch v. NSA*, Civil Action No. 1:12-cv-01088-CRC, Minute Order entered on May 4, 2015. *See also* ¶ 16.

4

post the releasable portions of the collection at the conclusion of its review process, which will facilitate consistency in the application of FOIA exemptions and the public's access to and understanding of the documents.

12. As noted above, the Department received the 55,000 pages in paper form. The documents were provided in twelve bankers' boxes (approximately 24" x 15" x 10 ¼" in size) with labels placed on the outside of the boxes that corresponded approximately to the timeframe of the documents within a given box. The Department initially performed tasks necessary to organize the records. This included foldering, boxing, and creating a box level inventory of the records. In consultation with the National Archives and Records Administration, the Department also conducted a page-by-page review of the documents to identify, designate, mark, and inventory entirely personal correspondence, i.e., those documents that are not federal records, included within the 55,000 pages.

13. Given the breadth and importance of the many foreign policy issues on which the Secretary of State and the Department work, the review of these materials will likely require consultation with a broad range of subject matter experts within the Department and other agencies, as well as potentially with foreign governments. These records are comprised of communications to or from the former Secretary of State, who was responsible for the overall direction and supervision of the full range of activities of the Department, which operates in approximately 285 locations around the globe. The Department is committed to processing the 55,000 pages as expeditiously as possible, while taking into consideration the Department's other legal obligations.

14. The Department has taken multiple steps to facilitate its review of the 55,000 pages. It has developed an approach for addressing the review, upgraded the capabilities of the

5

Department's processing software, and dedicated staff. Currently, this project is staffed fulltime by a project manager and two case analysts, as well as nine FOIA reviewers who devote the entirety of their time at the State Department to this effort, plus other analysts and information technology specialists who provide collateral assistance to this review in addition to their regular duties. The team managing this project has met daily since early April to implement and oversee this large undertaking.

15.     Each page of the 55,000 must be individually hand-processed in order to ensure that all information is being captured in the scanning process. The scanning process itself involves five steps that are time-consuming and labor-intensive. These are: (1) scanning (inserting barcode separator sheets between each document and its associated attachments and then scanning the documents, which includes converting them for optical character recognition ["OCR"], and then inputting the resulting OCR-ed files into the system in batches based on search segments); (2) scanning quality control (the scanned material is checked to ensure that each document is scanned properly and to flag documents that need to be re-scanned); (3) indexing (indexers review each scanned document to manually input bibliographic coding, such as the "To," "From," "CC," "BCC," "Date Sent," and "Subject" fields associated with that document into the system); (4) indexing quality control (a senior indexer reviews the indexed documents to ensure that the bibliographic coding has been properly input into the system); and, (5) duplicate detection resolution (the computer analyzes the indexed documents to identify possible duplicates between the document being ingested and those documents that already exist in the system). Any possible duplicates that cannot be resolved (identified as an exact duplicate, near duplicate, not a duplicate) by automated means are pushed forward for individual review for manual adjudication. This process was made even more complicated by the fact that some, but

6

not all, of the paper records that the Department received were double-sided. It took the

Department five weeks to perform the scanning process, which was completed recently in May.

There will be further work required to load these into a searchable database, which will be

completed by mid-June.

16.    In the weeks following the Department's receipt of the e-mails from Secretary

Clinton, the Department conducted a separate manual review of a date-limited portion of the

55,000 pages to locate any that were responsive to requests of the House Select Committee on

Benghazi. As a result of that manual review, the Department located and produced to the House

Select Committee 296 e-mails composed of approximately 850 pages. In light of the public

interest in those records and the fact that the Department already has identified them within the

larger collection, the Department has prioritized the FOIA review of those 296 e-mails. These

296 e-mails were therefore scanned first, following the procedures described above. The review

process for those e-mails included an initial review within the FOIA office, followed by

consultations and review by Department subject matter experts and other U.S. Government

agencies, as appropriate, for any documents containing information that originated with that

agency and/or in which that agency has a vested interest.[3] The Office of the Legal Adviser also

reviewed these materials to ensure the proper application of FOIA exemptions. All material that

can be released from the 296 e-mails will be made publicly available on the Department's FOIA

website.

---

[3] The Department reviews every FOIA request for U.S. Government interagency interests. In some instances, as
with some of the 296 e-mails discussed above, a document that originated with the Department of State may include
information that originated with another U.S. Government agency. In accordance with Department FOIA
regulations, that document would be referred to the applicable agency for a release recommendation or
determination. The relevant agency then conveys its release recommendation or determination to the Department
for response to the requester. *See* 22 C.F.R. § 171.11(k)(3).

*Leopold v. U.S. Dep't of State*
1:15-cv-000123-RC
Hackett Declaration

17.     The Department's review of the Benghazi e-mails has highlighted several factors that it expects will affect the timing of the review of the remaining e-mails provided by Secretary Clinton. Like the Department of State itself, each of the U.S. Government agencies that need to review these documents deals with sensitive, emergent issues, which may require them to reallocate priorities and resources in response to changing events around the globe. Thus, the amount of time that other agencies may need to review these documents cannot be predicted with precision. The Under Secretary for Management has advised senior leadership in other government entities (Central Intelligence Agency, Department of Defense, Department of Justice, Office of the Director of National Intelligence, National Security Council, and the White Hourse) of this review and has asked for their assistance. The Department has attempted to take into account these issues in developing its plan for the review and processing of the remaining e-mails provided by Secretary Clinton and in estimating the amount of time the review and processing will take. It is, however, possible that the time required for the interagency review process could impact the Department's proposed review timeline.

18.     The Department's review of the rest of the remaining records in the collection provided by Secretary Clinton is underway. As noted above, the Department's objective is to make this information available to the public as quickly as possible.

19.     The Department has begun to implement the following plan to review the remaining material in the 55,000 pages. The collection has been separated into 300 segments of approximately 100 e-mails messages each. The Department plans to post on its FOIA website all the releasable material in the collection after all of the e-mails have been reviewed using the following process, which involves ongoing, serial reviews of 10-segment batches:

8

**Initial FOIA Office Review**

- Beginning in May, while scanning was still ongoing, the FOIA office began the review of the 55,000 pages. The FOIA office plans to review a batch (approximately 1,000 e-mails) each week and apply initial proposed redactions consistent with our FOIA practice.

**Consultation With Subject Matter Experts**

- The FOIA office then plans to send the batch to appropriate Department subject matter experts ("SMEs") for consultation and review within one week. These SMEs are drawn from the ranks of the Department's experienced foreign policy experts, who have continuing national security responsibilities. While SMEs are reviewing the first batch that the FOIA office has already reviewed, the FOIA office will begin reviewing the next batch.[4]

- At the end of the week, the Department plans for the SMEs to return the batch that they reviewed, at which time the FOIA office would incorporate any appropriate review recommendations from the SMEs. The time required to do this will naturally vary, depending on the extent of the feedback from the SMEs, but the Department plans to adjust its resource allocation to ensure that this is accomplished as quickly as possible.

**Agency Consultations**

- The FOIA office will then refer any e-mails in segments implicating other agencies' interests to those agencies for their review.

- The agencies will be asked to complete their review of each batch and return the materials to the FOIA office within one week.

- Upon receipt of feedback from the relevant agencies, the FOIA office will incorporate any appropriate review recommendations. As with the SMEs, the time required to do this will naturally vary, depending on the extent of the feedback from the agencies.

**Legal Review**

- After the SME and agency review, the FOIA office plans to provide the batch to the Office of the Legal Adviser for a review. The Office of the Legal Adviser will be asked to complete its review of the batch within one week.

- Upon receiving feedback from the Office of the Legal Adviser, the FOIA office will incorporate any appropriate review recommendations.

---

[4] Thus, in the first week, the FOIA office would review segments 1-10; in the second week, the FOIA office plans to send segments 1-10 to SMEs and begin reviewing segments 11-20.

9

**Final Review**

- Any divergent recommendations among reviewing entities will be resolved through discussions.

- The Department plans to repeat the above process until all of the materials are reviewed.

- After all of the materials have been reviewed, the Department plans to conduct a final review of the records to ensure that similar subject matter has been redacted in a fashion that is both internally consistent and legally appropriate.

At the conclusion of this process, the Department will post all non-exempt material on the Department's publicly-available FOIA website.

20.     The Department's plan, as outlined above, would result in its review being completed by the end of the year.  To factor in the holidays, however, the Department would ask the Court to adopt a proposed completion date of January 15, 2016.  As noted above, the Department understands the considerable public's interest in these records and is endeavoring to complete the review and production of them as expeditiously as possible.  The collection is, however, voluminous and, due to the breadth of topics, the nature of the communications, and the interests of several agencies, presents several challenges, as described above.  Accordingly, the Department requests that the deadline for production of former Secretary Clinton's e-mails to Plaintiff, via the Department's production of the e-mails to the public on its FOIA website, be January 15, 2016.  This date is premised on the Department's good faith estimate of the time required to complete this involved, intensive process.  Should unanticipated circumstances, or circumstances beyond the Department's control, force any delay, the Department will, of course, keep the Court apprised of any such changes and seek modification of this deadline.

10

\* \* \*

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed this ___18th___ day of May 2015, Washington, D.C.

John F. Hackett

*Leopold v. U.S. Dep't of State*
1:15-cv-000123-RC
Hackett Declaration

Exhibit D



**cdmillsGroup**

*endeavors that matter*

<u>**VIA HAND DELIVERY**</u>

The Honorable Patrick F. Kennedy
Under Secretary of State for Management
U.S. Department of State
2201 C Street, N.W.
Washington, DC 20520

December 5, 2014

Dear Under Secretary Kennedy:

I am writing in response to your request for assistance in helping the
Department meet its requirements under the Federal Records Act.

Like Secretaries of State before her, Secretary Clinton at times used her
own electronic mail account when engaging with other officials. On
matters pertaining to the conduct of government business, it was her
practice to use the officials' government electronic mail accounts.
Accordingly, to the extent the Department retains records of government
electronic mail accounts, it already has records of her electronic mail
during her tenure preserved within the Department's recordkeeping
systems.

Out of an abundance of caution though and to assist the Department, the
Secretary's electronic mail has been reviewed.  Please find enclosed those
electronic mails we believe respond to your request. Given the volume of
electronic mails being provided, please note these materials inevitably
include electronic mail that are not federal, and in some cases are
personal, records which we request be handled accordingly.

Sincerely,

*CDMills*

Cheryl Mills

**Exhibit E**

UNCLASSIFIED
U.S. Department of State
Case No. F-2015-04841
Doc No. C05739777
Date: 05/13/2015

STATE DEPT. - PRODUCED TO HOUSE SELECT BENGHAZI COMM.
SUBJECT TO AGREEMENT ON SENSITIVE INFORMATION & REDACTIONS.  NO FOIA WAIVER.

RELEASE IN PART
B6

| | |
|---|---|
| **From:** | Huma Abedin <Huma@clintonemail.com> |
| **Sent:** | Monday, October 29, 2012 3:35 PM |
| **To:** | H |

we are preparing for sandy here. parts of the city are crazy already. there is a crane on top of a high building on 57th street that they think is about to fall which is pretty crazy. everything is shut down but its been a good conference call day!

i talked to chris this morning and she is gathering things for you based on all the the things we discussed. there is a possibility of 3 nice gowns and a lot of blouses and jackets. i think we should find a day in ny sometime soon so you can try things on.

Had a long visit with my friend who was in benghazi. will download in person but think very important for you to call[          ]the injured DS officer. he is now well enough to talk. he doesnt want a visit but a check in call and asking him if he needs anything would be good. monica will remind you of this.                                                                          B6

Also heard from both the bush and reagan libraries over the last few days. neither wants to host the oscar exhibit after it leaves little rock so i think we will focus on making that exhibit amazing and i will explain situation to odlr.

more later

UNCLASSIFIED
U.S. Department of State
Case No. F-2015-04841
Doc No. C05739777
Date: 05/13/2015

STATE DEPT. - PRODUCED TO HOUSE SELECT BENGHAZI COMM.
SUBJECT TO AGREEMENT ON SENSITIVE INFORMATION & REDACTIONS.  NO FOIA WAIVER.          STATE-SCB0045765

UNCLASSIFIED U.S. Department of State Case No. F-2014-20439 Doc No. C05761157 Date: 06/30/2015

RELEASE IN PART B6

| | |
|---|---|
| **From:** | Huma Abedin <Huma@clintonemail.com> |
| **Sent:** | Sunday, May 3, 2009 3:07 PM |
| **To:** | H; 'habedin        '; 'ValmoroLJ@state.gov' |
| **Subject:** | Re: Tomorrow |

B6

Tuesday

----- Original Message -----
From: H <HDR22@clintonemail.com>
To: 'HAbedin       <         ; 'ValmoroLJ@state.gov' <ValmoroLJ@state.gov>
Sent: Sun May 03 15:06:47 2009
Subject: Tomorrow

B6

Are you sure there is no PC Monday on Pakistan?

UNCLASSIFIED  U.S. Department of State  Case No. F-2014-20439 Doc No. C05760535  Date: 06/30/2015

RELEASE IN PART
B6

| | |
|---|---|
| **From:** | H <hrod17@clintonemail.com> |
| **Sent:** | Sunday, August 30, 2009 1:44 PM |
| **To:** | 'abedinh@state.gov' |
| **Subject:** | Re: Turkey-Armenia text for Davutoglu call |

What is Gordon's email? I couldn't get address off this traffic.

----- Original Message -----
From: Abedin, Huma <AbedinH@state.gov>
To: H
Sent: Sun Aug 30 13:37:54 2009
Subject: Re: Turkey-Armenia text for Davutoglu call

B6

----- Original Message -----
From: H <HDR22@clintonemail.com>
To: Abedin, Huma
Sent: Sun Aug 30 13:35:07 2009
Subject: Re: Turkey-Armenia text for Davutoglu call

----- Original Message -----
From: Abedin, Huma <AbedinH@state.gov>
To: H
Sent: Sun Aug 30 13:32:43 2009
Subject: Re: Turkey-Armenia text for Davutoglu call

----- Original Message -----
From: H <HDR22@clintonemail.com>
To: Abedin, Huma
Sent: Sun Aug 30 13:25:30 2009
Subject: Re: Turkey-Armenia text for Davutoglu call

----- Original Message -----
From: Abedin, Huma <AbedinH@state.gov>
To: H
Sent: Sun Aug 30 13:01:50 2009
Subject: Re: Turkey-Armenia text for Davutoglu call

UNCLASSIFIED  U.S. Department of State  Case No. F-2014-20439  Case No. C05760535  Date: 06/30/2015

UNCLASSIFIED U.S. Department of State   Case No. F-2014-20439 Doc No. C05760597 Date: 06/30/2015

**RELEASE IN PART
B6**

| | | |
|---|---|---|
| **From:** | Cheryl Mills <cheryl.mills             > | **B6** |
| **Sent:** | Thursday, March 26, 2009 7:04 AM | |
| **To:** | H | |
| **Subject:** | FW: | |

we still need to decide what to do for them

**From:** Cheryl Mills [mailto:cmills           ]
**Sent:** Thursday, March 19, 2009 6:56 PM
**To:** jrkardon        cheryl.mills       
**Subject:** Re:

Hey dear

Let me check on what she can/will do.

Nice hearing from you!

Cdm

-----Original Message-----
From: Josh Kardon <jrkardon(
To: Cheryl Mills; Cheryl Mills <cheryl.mills
Sent: Thu Mar 19 17:20:15 2009
Subject:

Hi Cheryl,

Josh Kardon here - we "met" via phone during the ill-fated Oregon campaign. In my real life I'm Senator Wyden's Chief of Staff, and I am attempting to help        get some justice through the Senate Intelligence Committee.                            so I thought I would check in. In a nutshell, Ron is prepared to approach Intel Chair Feinstein and others to try to make                         but this will be a heavy lift . . . and that's just with the Democrats.

If this is something the Secretary wants to help with, and you need more info, let me know.

Let me know if we can be of assistance on other matters, as well,

Josh

UNCLASSIFIED U.S. Department of State   Case No. F-2014-20439 Doc No. C05760597 Date: 06/30/2015

UNCLASSIFIED U.S. Department of State  Case No. F-2014-20439 Doc No. C05762476  Date: 06/30/2015

**RELEASE IN PART**
**B5, B6**

| | |
|---|---|
| **From:** | Mills, Cheryl D <MillsCD@state.gov> |
| **Sent:** | Tuesday, June 23, 2009 3:27 AM |
| **To:** | H |
| **Subject:** | Re: HSF Follow up letter |

Will see - he is doing the paperwork

----- Original Message -----
From: H <HDR22@clintonemail.com>
To: Mills, Cheryl D
Sent: Mon Jun 22 21:48:35 2009
Subject: Re: HSF Follow up letter

Good. What is latest re Sid Blumenthal?

----- Original Message -----
From: Mills, Cheryl D <MillsCD@state.gov>
To: H
Sent: Mon Jun 22 21:45:56 2009
Subject: Fw: HSF Follow up letter

Fyi

---

From: Eizenstat, Stuart                                                       B6
To: Mills, Cheryl D;
 
Cc: Kennedy, J Christian; Jones-Johnson, Carolyn D;                              Becker, John
P (EUR); Scarlis, Basil;
Sent: Mon Jun 22 17:52:18 2009
Subject: FW: HSF Follow up letter

Dear Cheryl and Susan,

I am pleased to inform you that following two long conference calls with the Holocaust Survivors' Foundation and Sam
Dubbin, their lawyer, and with the timely intervention of Congressman Robert Wexler, the Foundation has sent the
letter below by FAX to Secretary Clinton, withdrawing their objection and supporting my efforts.

It was clear from the call that they are                                                          B5
                                         to all the major Jewish organizations, from the
American Jewish Committee and ADL to the Jewish Claims Conference. But they are a voice we should hear,

Thanks and best wishes,

Stu

UNCLASSIFIED U.S. Department of State  Case No. F-2014-20439 Doc No. C05762476  Date: 06/30/2015