UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-cv-1363-EGS |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF JOHN F. HACKETT

Pursuant to 28 U.S.C. § 1746, I, John F. Hackett, declare and state as follows:

1.    I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department"). In this capacity, I am the Department official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other applicable records access provisions. I have been employed by the Department in this capacity since June 2015, and prior to that, I served as the Deputy Director of IPS since April 2013, and Acting Director since March 2014. As the IPS Director, I am authorized to classify and declassify national security information. I make the following statements based upon my personal knowledge, which in turn is based upon a personal review of the records in the case file established for processing the subject request and upon information furnished to me in the course of my official duties. I am familiar with the efforts of Department personnel to process the subject requests, and I am in charge of coordinating the agency's search and recovery efforts with respect to those requests.

2.      The core responsibilities of IPS include: (1) responding to records access requests made by the public (including under the FOIA, the Privacy Act ("PA"), and the mandatory declassification review requirements of the Executive Order governing classified national security information), by Members of Congress, by other government agencies, and those made pursuant to judicial process such as subpoenas, court orders, and discovery requests; (2) records management; (3) privacy protection; (4) national security classification management and declassification review; (5) corporate records archives management; (6) research; (7) operation and management of the Department's library; and (8) technology applications that support these activities.

3.      By letter dated May 21, 2013 (Exhibit 1), Plaintiff submitted a FOIA request to the Department for:

> Any and all SF-50 (Notification of Personnel Action) forms for Ms. Huma Abedin.
>
> Any and all contracts (including, but not limited to, personal service contracts) between the Department of State and Ms. Huma Abedin.
>
> Any and all records regarding, concerning, or related to the authorization for Ms. Huma Abedin to represent individual clients and/or otherwise engage in outside employment while employed by and/or engaged in a contractual arrangement with the Department of State.

Plaintiff's request further stated that "[t]he time frame for this request is January 1, 2010 to present."

4.      On July 31, 2015, the Court ordered the U.S. Department of State (the "Department"), as related to Judicial Watch's FOIA request in this case, to "identify any and all servers, accounts, hard drives, or other devices currently in the possession or control of the

2                            *Judicial Watch, Inc. v. U.S. Dep't of State*
                             No. 13-cv-1363-EGS
                             Hackett Declaration

Department or otherwise that may contain responsive information." This declaration responds to the Court's inquiry.

The Department's Offices and Records Systems

5.        The Department determined that the following offices and agency records systems were reasonably likely to contain responsive records: the Bureau of Human Resources, the Office of the Executive Secretariat, the Office of the Legal Adviser, the Office of the Under Secretary for Management, and the Central Foreign Policy Records. The searches of these offices and agency records systems are underway.

**The Bureau of Human Resources**

6.        The Department determined that the following electronic records systems within the Bureau of Human Resources ("HR") were reasonably likely to contain responsive records: HR Online and the Global Employment Management System ("GEMS"). HR Online is the system that serves as HR's main web-portal. Contained within HR Online is Ms. Abedin's electronic Official Personnel Folder ("eOPF"). The eOPF system, which is managed by HR's Records and Information Management Division, contains documents pertaining to HR administration, employee performance, and retirement, including Standard Form 50s (Notifications of Personnel Actions) ("SF-50s") for Department employees. GEMS is the primary Human Resources Management application and centralized personnel database for the Department.

**The Office of the Executive Secretariat**

7.        The Department determined that the following records systems within the Office of the Executive Secretariat ("S/ES") were reasonably likely to contain responsive records:

3

(1) Ms. Abedin's personnel file, which is kept in paper form within the HR component of S/ES;

(2) The state.gov email accounts of Ms. Abedin, Cheryl Mills (who served as the former Secretary's Chief of Staff and Counselor at the Department) and two other former employees;[1]

(3) the Secretariat Tracking and Retrieval System ("STARS"); and (4) Everest.[2]

8.    The Department is not currently aware of any personal computing devices issued by the Department to former Secretary Clinton, Ms. Abedin, or Ms. Mills that may contain responsive records.

### The Office of the Legal Adviser

9.    The Department determined that the following records systems within the Office of the Legal Adviser ("L") were reasonably likely to contain responsive records: (1) L's electronic records management system; (2) relevant paper records; (3) the electronic Financial Tracking Disclosure System within L's sub-office for Ethics and Financial Disclosures ("L/EFD"); and (4) relevant state.gov email accounts of attorneys and staff within L/EFD, L's sub-office for Employment Law ("L/EMP"), and the L Front Office.

### The Office of the Under Secretary for Management

10.    The Department determined that the following records systems within the Office of the Under Secretary for Management ("M") were reasonably likely to contain responsive records: (1) the state.gov email accounts of Under Secretary Patrick Kennedy and two other employees in the M Front Office; and (2) the electronic shared drive and paper records of M's Office of White House Liaison.

---

[1] For details about non-state.gov accounts, see infra ¶¶ 12-15.

[2] Everest is a Microsoft SharePoint based enterprise system used to task, track, control and archive documents containing substantive foreign policy information passing to, from, and through the offices of the Secretary of State, the Deputy Secretaries of State and other Department principal officers.

### The Central Foreign Policy Records

11.     The Department determined that the Central Foreign Policy Records ("Central File") was reasonably likely to contain responsive records. The Central File is the Department's centralized records system and contains over 30 million records in electronic form of a substantive nature that establish, discuss, or define foreign policy, set precedents, or require action or use by more than one office.

### Non-State.Gov Accounts

12.     The Department determined that non-state.gov email accounts of former Secretary Clinton, Ms. Abedin, and Ms. Mills were reasonably likely to contain responsive records. The Department does not possess or control those accounts, but as described below, has received documents from those accounts. Furthermore, other than the information that has been provided to the Department as described below, the Department is not in a position to attest to non-Department servers, accounts, hard drives, or other devices that may contain responsive information.

13.     The Department received approximately 55,000 pages of emails from former Secretary Clinton (the "Clinton emails"). These records were provided by her in response to a request from the Department that, if former Secretaries or their representatives were "aware or [were to] become aware in the future of a federal record, such as an email sent or received on a personal email account while serving as Secretary of State, that a copy of this record be made available to the Department." See Defendant's Notice of Filing dated August 6, 2015, Exh. A at 1-3. At the request of the Court, by declaration dated August 8, former Secretary Clinton stated "I have directed that all my e-mails on clintonemail.com in my custody that were or potentially

5

were federal records be provided to the Department of State, and on information and belief, this

has been done." See Supplement to Defendant's August 7, 2015 Status Report dated August 10,

2015, Exh. A.

14.     By letter dated August 12, 2015, former Secretary Clinton's attorney informed the

Department that he "provided to the Department of Justice on August 6, 2015, the .pst file

containing electronic copies of the 55,000 pages of emails on a thumb drive (along with two

copies)," and that "Platte River Networks is today providing to the Department of Justice the

server and related equipment on which emails to and from Secretary Clinton's clinonemail.com

were stored from 2009 to 2013 and which PRN took possession of in 2013." See August 12,

2015 Status Report, Exh. E.

15.     The Department has sent letters to Ms. Abedin and to Ms. Mills, requesting that

they make available to the Department any federal records that they may have in their

possession, such as emails concerning official government business sent or received on a

personal email account while serving in their official capacities with the Department, if there is

any reason to believe that those records may not otherwise be preserved in the Department's

recordkeeping system. The Department has received records from both Ms. Abedin and Ms.

Mills in response to its letters. By letter dated August 12, 2015, counsel for Ms. Mills

represented that "we have produced all potential federal records identified in Ms. Mills'

possession." See attached, Exh. 2. By letter dated August 7, 2015, Ms. Abedin's counsel

represented that they are "on course to complete [their] production of responsive and potentially

responsive materials on or before August 28, 2015." See attached, Exh. 3. The records reviewed

to date by the Department indicate that Ms. Abedin and Ms. Mills used personal email accounts

located on commercial servers at times for government business.  Additionally, Huma Abedin had an account on clintonemail.com, which was used at times for government business.

\*\*\*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this ___14th___ day of August 2015, Washington, D.C.

_____

John F. Hackett



*F-2013-08812*

May 21, 2013

## VIA CERTIFIED MAIL & FACSIMILE (202-261-8579)

Office of Information Programs and Services
A/GIS/IPS/RL
U. S. Department of State
Washington, D. C. 20522-8100

### Re:  Freedom of Information Act Request

Dear Freedom of Information Officer:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, Judicial Watch, Inc. hereby requests that the Department of State produce the following within twenty (20) business days:

**1. Any and all SF-50 (Notification of Personnel Action) forms for Ms. Huma Abedin.**

**2. Any and all contracts (including, but not limited to, personal service contracts) between the Department of State and Ms. Huma Abedin.**

**3. Any and all records regarding, concerning, or related to the authorization for Ms. Huma Abedin to represent individual clients and/or otherwise engage in outside employment while employed by and/or engaged in a contractual arrangement with the Department of State.**

**The time frame for this request is January 1, 2010 to the present.**

If any responsive record or portion thereof is claimed to be exempt from production under FOIA, please provide sufficient identifying information with respect to each allegedly exempt record or portion thereof to allow us to assess the propriety of the claimed exemption. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).  In addition, any reasonably segregable portion of a responsive record must be provided, after redaction of any allegedly exempt material. 5 U.S.C. § 552(b).

For purposes of this request, the term "record" shall mean:  (1) any written, printed, or typed material of any kind, including without limitation all correspondence, memoranda, notes, messages, letters, cards, facsimiles, papers, forms, telephone

---

425 Third St., SW, Suite 800, Washington, DC  20024 • Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 • Email: info@JudicialWatch.org • www.JudicialWatch.org

Department of State
May 21, 2013
Page 2 of 3

messages, diaries, schedules, calendars, chronological data, minutes, books, reports, charts, lists, ledgers, invoices, worksheets, receipts, returns, computer printouts, printed matter, prospectuses, statements, checks, statistics, surveys, affidavits, contracts, agreements, transcripts, magazine or newspaper articles, or press releases; (2) any electronically, magnetically, or mechanically stored material of any kind, including without limitation all electronic mail or e-mail; (3) any audio, aural, visual, or video records, recordings, or representations of any kind; (4) any graphic materials and data compilations from which information can be obtained; and (5) any materials using other means of preserving thought or expression.

Judicial Watch also hereby requests a waiver of both search and duplication fees pursuant to 5 U.S.C. §§ 552(a)(4)(A)(ii)(II) and (a)(4)(A)(iii). Judicial Watch is entitled to a waiver of search fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) because it is a member of the news media. *Cf. National Security Archive v. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989)(defining news media within FOIA context). Judicial Watch has also been recognized as a member of the news media in other FOIA litigation. *See, e.g., Judicial Watch, Inc. v. U.S. Department of Justice*, 133 F. Supp.2d 52 (D.D.C. 2000); and, *Judicial Watch, Inc. v. Department of Defense*, 2006 U.S. Dist. LEXIS 44003, *1 (D.D.C. June 28, 2006). Judicial Watch regularly obtains information about the operations and activities of government through FOIA and other means, uses its editorial skills to turn this information into distinct works, and publishes and disseminates these works to the public. It intends to do likewise with the records it receives in response to this request.

Judicial Watch also is entitled to a complete waiver of both search fees and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Under this provision, records:

> shall be furnished without any charge or at a charge
> reduced below the fees established under clause (ii) if
> disclosure of the information is in the public interest
> because it is likely to contribute significantly to public
> understanding of the operations or activities of government
> and is not primarily in the commercial interest of the
> requester.

5 U.S.C. § 552(a)(4)(A)(iii).

In addition, if records are not produced within twenty (20) business days, Judicial Watch is entitled to a complete waiver of search and duplication fees under Section 6(b) of the OPEN Government Act of 2007, which amended FOIA at 5 U.S.C. § (a)(4)(A)(viii).

Judicial Watch is a 501(c)(3), not-for-profit, educational organization, and, by definition, it has no commercial purpose. Judicial Watch exists to educate the public

Department of State
May 21, 2013
Page 3 of 3

about the operations and activities of government, as well as to increase public understanding about the importance of ethics and the rule of law in government. The particular records requested herein are sought as part of Judicial Watch's ongoing efforts to document the operations and activities of the federal government and to educate the public about these operations and activities. Once Judicial Watch obtains the requested records, it intends to analyze them and disseminate the results of its analysis, as well as the records themselves, as a special written report. Judicial Watch will also educate the public via radio programs, Judicial Watch's website, and/or newsletter, among other outlets. It also will make the records available to other members of the media or researchers upon request. Judicial Watch has a proven ability to disseminate information obtained through FOIA to the public, as demonstrated by its long-standing and continuing public outreach efforts.

Given these circumstances, Judicial Watch is entitled to a public interest fee waiver of both search costs and duplication costs. Nonetheless, in the event our request for a waiver of search and/or duplication costs is denied, Judicial Watch is willing to pay up to $350.00 in search and/or duplication costs. Judicial Watch requests that it be contacted before any such costs are incurred, in order to prioritize search and duplication efforts.

In an effort to facilitate record production within the statutory time limit, Judicial Watch is willing to accept documents in electronic format (e.g. e-mail, .pdfs). When necessary, Judicial Watch will also accept the "rolling production" of documents.

If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 202-646-5172 or sdunagan@judicialwatch.org. We look forward to receiving the requested documents and a waiver of both search and duplication costs within twenty (20) business days. Thank you for your cooperation.

Sincerely,

Sean Dunagan
Judicial Watch

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW                                    WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

UNIT 3601, OFFICE TOWER A, BEIJING
FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

BETH A WILKINSON

TELEPHONE (202) 223-7340
FACSIMILE   (202) 204-7395

E-MAIL   bwilkinson@paulweiss com

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
PO BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

August 12, 2015

By Electronic Mail & Hand Delivery

Patrick F. Kennedy
Under Secretary for Management
United States Department of State
2201 C Street, NW
Washington, DC 20520

Dear Under Secretary Kennedy:

        We represent Cheryl Mills and are writing in further response to your
March 11, 2015 request that Ms. Mills assist the Department of State in responding to a
subpoena directed to Secretary John Kerry from the House Select Committee on
Benghazi and in preserving potential federal records in her custody. Enclosed with this
letter are documents that were in Ms. Mills' custody and control that we have identified
for your further review.

        In providing these materials, we are not indicating that they are all federal
records. Rather, we have been over-inclusive in our review and production of Ms. Mills'
materials to allow the Department of State to determine which documents to retain and
archive. Accordingly, we have likely provided non-records in this production and we
request that you treat those documents as confidential and non-public, not grant access to
any party without consultation with Ms. Mills, and return them to Ms. Mills as soon as
possible.

        With the delivery of these materials today, we have produced all potential
federal records identified in Ms. Mills' possession. Should any additional potential federal
records be identified in the future, we will promptly notify the Department of State and
provide them.

                            Sincerely,

                            Beth Wilkins // HgB

                            Beth A. Wilkinson

August 7, 2015

**By Hand Delivery and Email**

Patrick F. Kennedy
Under Secretary for Management
United States Department of State
2201 C Street NW
Washington, DC 20520

Dear Under Secretary Kennedy:

We write in further reply to your request for Ms. Huma Abedin's assistance in preserving any potential federal records in her possession relating to her work with the Department from 2009 to 2013.

Enclosed with this letter are documents in Ms. Abedin's possession that we have identified as responsive or potentially responsive to your request. Our production of a given document does not indicate we believe it is a federal record. We have been, and will continue to be, over-inclusive in our review and production of Ms. Abedin's materials to allow the Department of State to determine which documents qualify as federal records. Accordingly, to the extent we have provided non-records in this production or in Ms. Abedin's previous production of July 9, 2015, we request that you treat those documents as confidential and non-public and not grant access to any party without further consultation with Ms. Abedin, and return them to Ms. Abedin as soon as possible.

As indicated in our August 6 letter to you, we are on course to complete our production of responsive and potentially responsive materials on or before August 28, 2015.

Sincerely,

Karen L. Dunn
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015

Miguel E. Rodriguez
Bryan Cave LLP
1155 F Street, NW
Washington, DC 20004

Enclosure