**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
JUDICIAL WATCH,                )
                               )
            Plaintiff,         )
                               )   Civil Action No. 13-1363
        v.                     )
                               )
U.S. DEPARTMENT OF STATE       )
                               )
            Defendant.         )
_____)
```

**MEMORANDUM AND ORDER**

**I.   Background**

    This case presents a narrow legal question: did the United
States Department of State ("State Department"), in good faith,
conduct a search reasonably calculated to uncover all relevant
documents in response to Plaintiff Judicial Watch's ("Judicial
Watch") Freedom of Information Act ("FOIA") request? As the
Court ruled during the February 23, 2016 hearing on Judicial
Watch's Motion for Discovery under Rule 56(d), questions
surrounding the creation, purpose and use of the
clintonemail.com server must be explored through limited
discovery before the Court can decide, as a matter of law,
whether the Government has conducted an adequate search in
response to Judicial Watch's FOIA request. *See* Fed. R. Civ. P.
56(d); Hr'g Tr., Docket No. 59 at 78: 9-25.

**A. The FOIA request at issue.**

The FOIA request at issue focuses on employment records of Ms. Huma Abedin, one of former Secretary of State Hillary Clinton's ("Secretary Clinton" or "Mrs. Clinton") closest advisors. Designated as a "special government employee," Ms. Abedin was allowed to engage in private sector work while also working at the State Department. Pl.'s Mot. Discovery, Docket No. 48 at 15. Specifically, Ms. Abedin served as a consultant to Teneo Holdings and the Clinton Foundation. *Id.* Teneo is led by a long-time advisor to former President Bill Clinton. *Id.*

On November 10, 2013, Judicial Watch filed this lawsuit seeking the production of the following documents:

- Any and all SF-50 (notification of personnel action) forms for Ms. Huma Abedin;

- Any and all contracts (including, but not limited to, personal service contracts) between the Department of State and Ms. Huma Abedin; and

- Any and all records regarding, concerning or related to the authorization for Ms. Huma Abedin to represent individual clients and/or otherwise engage in outside employment while employed by and/or engaged in a contractual relationship with State.

Compl., Docket No. 1. Judicial Watch's request covered the time period of January 2010 to May 21, 2013. *Id.*

**B. Procedural history.**

The State Department acknowledged receipt of Judicial Watch's FOIA request by letter on June 5, 2013, but did not

substantively respond until after this lawsuit was filed. Compl.
¶ 6-8. In response to this lawsuit, the State Department
searched the records of the Bureau of Human Resources, the
Office of the Executive Secretariat, the Office of the Legal
Advisor and the Central Foreign Policy Records. Def.'s Mot.
Summ. J., Docket 47 at 3-4. The State Department produced eight
non-exempt records to Judicial Watch. *Id.* The parties stipulated
to dismissal of this case on March 14, 2014. Docket No. 12.

In June 2015, following the revelation by the New York Times
of the clintonemail.com server, the parties agreed that the case
should be re-opened. *See* Pl.'s Mot. Discovery, Docket No. 48 at
2; *see also* June 19, 2015 Minute Order. Pursuant to a Court
order, the State Department collected and searched federal
records that were voluntarily produced by Mrs. Clinton, Ms.
Abedin and Ms. Cheryl Mills. Def.'s Mot. Summ. J., Docket 47 at
10. The State Department also searched the four offices listed
above for a second time. *Id.* For the first time, however, the
Office of the Under Secretary for Management was also searched.
*Id.* Search terms agreed upon by the parties were used to
complete these searches, which resulted in a rolling production
of 48 pages on September 18, 2015; 15 pages on October 13, 2015;
re-release of three documents on November 12, 2015; and re-
release of two documents in full and re-release in part of one
document previously withheld on November 13, 2015. *Id.* at 10 and

13. The State Department withheld two Office of Government Ethics Form 540s under FOIA exemption 3. *Id.*

On November 13, 2015, the State Department filed a Motion for Summary Judgment. *See* Docket No. 47. Judicial Watch responded with a Motion for Discovery under Rule 56(d), arguing that limited discovery is necessary before it can respond to the State Department's claim that it conducted an adequate search. Pl.'s Mot. Discovery, Docket No. 48. The parties' briefing on Judicial Watch's Motion for Discovery was finalized by the end of January 2016, and on February 23, 2016, the Court heard oral argument on the motion. *See* Hr'g Tr., Docket No. 59. The Court granted Plaintiff's Motion for Discovery in open court and directed the parties to submit narrowly tailored discovery proposals for the Court's consideration. *Id.* On March 16, 2016, the State Department's Motion for Summary Judgment was denied without prejudice in light of the Court's consideration of the parties' discovery proposals. *See* March 16, 2016 Minute Order.

Although the State Department has not waived it's objection to discovery, the parties were able to reach an agreement on the relevant scope of discovery. *See* Docket No. 65. The Court applauds the parties' cooperative efforts and approves their joint proposal for limited discovery. The purpose of this Memorandum and Order is to explain in more detail the basis for

4

the Court's February 28, 2016 decision to grant Judicial Watch's request for discovery.

### C. Key facts related to the clintonemail.com server.

Critical facts related to the clintonemail.com server preclude a legal analysis, at this time, of whether the State Department conducted an adequate search under FOIA. First, the clintonemail.com server was established eight days prior to Mrs. Clinton being sworn in as Secretary of State. Hr'g Tr. 23:20 – 24:1. Mrs. Clinton used clintonemail.com email for personal and professional purposes throughout her tenure as Secretary of State. *See* Clinton Decl., Docket No. 22. No state.gov email or electronic device was ever issued to Mrs. Clinton from the State Department. Pl.'s Mot. Discovery, Docket No. 48 at 12.

Ms. Abedin was assigned an email account on the clintonemail.com server as well as one at state.gov. *Id.* at 11. It is unknown whether any other State Department staff had an email account on the clintonemail.com server. Hr'g Tr. 22: 1-13. However, email communications from January 2009, just several weeks after Mrs. Clinton was sworn in, confirm that senior State Department staff had knowledge of the clintonemail.com server. *See* Docket No. 52 at 2-4; *see also* Hr'g Tr. 49: 12-16 (Mr. Myers, counsel for the State Department: "I think it's undisputed that former Secretary Clinton was using the e-mail account to correspond with some people who were in senior

5

positions at the State Department, and that they were
necessarily aware of the address from which she was sending e-
mails."). Notably, the process by which the State Department
took possession of Mrs. Clinton and Ms. Abedin's federal records
from the clintonemail.com server was through self-selection by
Mrs. Clinton, Ms. Abedin, Ms. Mills and their private counsel.
Clinton Decl.; *see also* Docket No. 20 (letters between State
Department and private counsel for Mrs. Clinton, Ms. Abedin and
Ms. Mills).

In late January 2009, there was communication among several
State Department staff about setting up a computer "off network"
so that then Secretary Clinton could check her email at the
State Department. *See* January 24, 2009 email chain, Docket No.
52. In August 2011 communication difficulties experienced by
Secretary Clinton prompted discussion among State Department
staff about whether issuing a State Department blackberry might
solve the problem. Pl.'s Reply, Docket No. 51, Exhibit C.
Stephen Mull, Executive Secretary of the State Department at the
time, noted that if Secretary Clinton used a State issued
blackberry, her identity "would be secret" but that the
state.gov email account "would be subject to FOIA requests." *Id.*
Ms. Abedin responded "let's discuss the state blackberry,
doesn't make a whole lot of sense." *Id.*

Finally, and critically, the January 2016 Office of Inspector General report, "Evaluation of the Department of State's FOIA Process for Requests Involving the Office of the Secretary" ("OIG Report") notes that although dozens of State Department staff communicated with Mrs. Clinton through the clintonemail.com server, there is no evidence that personnel involved in responding to FOIA requests were aware of Mrs. Clinton's clintonemail.com email address. OIG Report at 14-15, available at https://oig.state.gov/system/files/esp-16-01.pdf. The OIG Report also notes that at least one State Department lawyer reported his or her belief that the State Department was not responding to FOIA requests adequately because Mrs. Clinton's emails were excluded from FOIA searches. *Id.* at 15, fn 64.

## II. Discussion

### A. The purpose of FOIA.

FOIA was designed by Congress to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Morley v. C.I.A.*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal citations omitted). FOIA requires federal agencies to disclose all requested agency records, unless one of nine statutory exemptions applies. 5 U.S.C. § 552(a) and (b). Because disclosure rather than secrecy is the "dominate objective of the Act," the statutory exemptions are "narrowly

7

construed." *See McKneely v. United States Dept. of Justice*, 2015 WL 5675515 at *2 (D.D.C. 2015) (internal citations omitted).

**B. Standard for an adequate search under FOIA.**

A recurring question in FOIA cases is whether the agency conducted a search reasonably calculated to uncover all relevant documents. *Asarco Inc. v. U.S. Environmental Protection Agency*, 2009 WL 1138830 at *1 (D.D.C. 2009). The defending agency must show "beyond material doubt" that it conducted a reasonable search. *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The adequacy of an agency's search for responsive records is measured by "the reasonableness of the effort in light of the specific request." *McKinley v. FCIC*, 807 F. Supp. 2d 1, 4 (D.D.C. 2001) (*quoting Larson v. Dep't of State*, 565 F.3d. 857, 869 (D.C. Cir. 2009). An agency is not required to search every record system. *See Meeropol v. Messe*, 790 F.2d 942, 952-53 (D.C. Cir. 1986) (noting a search is not presumed unreasonable simply because it fails to produce all relevant material); *see also Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) (holding an agency need not demonstrate that all responsive documents were found and that no other relevant documents could possibly exist).

**C. Standard for discovery in a FOIA case.**

Discovery is rare in FOIA cases. *Thomas v. FDA*, 587 F. Supp. 2d 114, 115 (D.D.C. 2008) (Huvelle, J.)(noting that

"discovery is an extraordinary procedure in a FOIA action").
Discovery should be permitted, however, when a plaintiff raises
a sufficient question as to the agency's good faith in
processing documents in response to a FOIA request. *See, e.g.*
*Citizens for Responsibility & Ethics in Washington v. Dep't of*
*Justice*, 05-cv-2078, 2006 WL 1518964 (D.D.C. June 1, 2006)
(Sullivan, J.) (permitting discovery in a FOIA action where the
government engaged in extreme delay); *see also Landmark Legal*
*Foundation v. E.P.A.*, 959 F. Supp. 2d 175 (2013) (ordering
discovery in a FOIA action on the question of whether senior
administrators used personal emails for official business and
whether the EPA excluded key officials from their initial
search); *Landmark Legal Foundation v. E.P.A.*, 82 F. Supp. 3d
211, 220 (D.D.C. 2015) (noting that the behavior of the EPA
following Landmarks August 2012 FOIA request raised a
"reasonable suspicion" of wrongdoing, entitling Landmark
discovery on the possibility that "EPA may have purposefully
attempted to skirt disclosure under [] FOIA.").

> **D. Judicial Watch has raised sufficient questions as to**
> **whether the State Department processed its November 2013**
> **FOIA request in good faith.**

Relying on the facts discussed above, Judicial Watch raises
significant questions in its Motion for Discovery about whether
the State Department processed documents in good faith in

response to Judicial Watch's FOIA request. Judicial Watch is therefore entitled to limited discovery.

The State Department made two primary arguments in opposition to Plaintiff's Motion for Discovery. First, the State Department argued that it did not have possession and control of the clintonemail.com server, and therefore could not be found to have improperly withheld any documents. Def.'s Opp. Pl.'s Mot. Discovery, Docket No. 49 at 14 (citing *Reporters Committee for Freedom of the Press v. Kissinger*, 445 U.S. 136, 139 (1980) ("even if a document requested under FOIA is wrongfully in the possession of a party not an 'agency,' the agency which received the document does not 'improperly withhold' those materials by its refusal to institute a retrieval action."). Because the State Department did not possess or control Mrs. Clinton's server at the time Judicial Watch's FOIA request was received, the State Department argued it did not withhold any relevant documents. Def.'s Opp. Pl.'s Mot. at 14 ("Plaintiff's concession that the State Department did not possess former Secretary Clinton's emails at the time Plaintiff submitted its FOIA request, more than three months after she left the State Department, should be dispositive.").

The Court is unpersuaded by the State Department's reliance on *Kissinger*. The *Kissinger* Court explicitly did not address whether the "withholding" standard must be measured from the

10

time a request is received under circumstances where it is
"shown that an agency purposefully routed a document out of
agency possession in order to circumvent a FOIA request." *Id.* at
167, fn 9. Here, Judicial Watch alleges that the State
Department and Mrs. Clinton sought to "deliberately thwart FOIA"
through the creation and use of clintonemail.com. Pl.'s Mot.
Discovery, Docket No. 48 at 3. This allegation goes directly to
the type of circumstance *Kissinger* did not address.

Second, the State Department argued that it has done all
it is obligated to do under FOIA by searching the documents
returned by Mrs. Clinton, Ms. Abedin and Ms. Mills. Hr'g Tr. 61-
62. In support of this argument, the State Department relied on
*Judicial Watch v. John F. Kerry*, a Federal Records Act ("FRA")
case where the Court found Judicial Watch's claims moot in light
of the efforts the State Department had taken to recover federal
records from Mrs. Clinton and other government officials. *See*
Civil Action No. 15-785 (JEB), Docket No. 21. However, the
relevant standards under the FRA and FOIA are different. Under
the FRA, a plaintiff's right to compel referral to the Attorney
General is limited to situations where an agency has taken
either minimal or no action to remedy the removal or destruction
of federal records. *Id.* at 10 (citing *Armstrong v. Bush*, 924
F.2d 282, 296 (D.C. Cir. 1991). Although the State Department
has taken some action to recover federal records related to this

11

case, those efforts do not resolve the question of whether the
agency's search in response to Judicial Watch's FOIA request was
reasonable. As Judge Lamberth recently observed "[t]he State
Department's willingness to now search documents voluntarily
turned over to the Department by Secretary Clinton and other
officials hardly transforms such a search into an 'adequate' or
'reasonable' one." *See* Civil Action No. 14-1242 (RCL), Docket
No. 39.

In sum, the circumstances surrounding approval of Mrs.
Clinton's use of clintonemail.com for official government
business, as well as the manner in which it was operated, are
issues that need to be explored in discovery to enable the Court
to resolve, as a matter of law, the adequacy of the State
Department's search of relevant records in response to Judicial
Watch's FOIA request.

## III.   Conclusion

Having considered Plaintiff's proposed plan, State's
response, Plaintiff's reply, and the parties' jointly proposed
order, and recognizing that Defendant has not waived its
objection to discovery, it is hereby **ORDERED** that:

A.   The scope of permissible discovery shall be as follows:
the creation and operation of clintonemail.com for State
Department business, as well as the State Department's
approach and practice for processing FOIA requests that
potentially  implicated former Secretary Clinton's and
Ms. Abedin's emails and State's processing of the FOIA
request that is the subject of this action. Plaintiff is

not entitled to discovery on matters unrelated to whether State conducted an adequate search in response to Plaintiff's FOIA request, including without limitation: the substantive information sought by Plaintiff in its FOIA request in this case, which involves the employment status of a single employee; the storage, handling, transmission, or protection of classified information, including cybersecurity issues; and any pending FBI or law enforcement investigations.

B.   Plaintiff intends to take depositions of the following individuals and designees:

1. **Stephen D. Mull** (Executive Secretary of the State Department from June 2009 to October 2012 and suggested that Mrs. Clinton be issued a State Department BlackBerry, which would protect her identity and would also be subject to FOIA requests);

2. **Lewis A. Lukens** (Executive Director of the Executive Secretariat from 2008 to 2011 and emailed with Patrick Kennedy and Cheryl Mills about setting up a computer for Mrs. Clinton to check her clintonemail.com email account);

3. **Patrick F. Kennedy** (Under Secretary for Management since 2007 and the Secretary of State's principal advisor on management issues, including technology and information services);

4. 30(b)(6) deposition(s) of Defendant regarding the processing of FOIA requests, including Plaintiff's FOIA request, for emails of Mrs. Clinton and Ms. Abedin both during Mrs. Clinton's tenure as Secretary of State and after;

5. **Cheryl D. Mills** (Mrs. Clinton's Chief of Staff throughout her four years as Secretary of State);

6. **Huma Abedin** (Mrs. Clinton's Deputy Chief of Staff and a senior advisor to Mrs. Clinton throughout her four years as Secretary of State and also had an email account on clintonemail.com);

7. **Bryan Pagliano** (State Department Schedule C employee who has been reported to have serviced and maintained the

server that hosted the "clintonemail.com" system during Mrs. Clinton's tenure as Secretary of State);

8. Plaintiff reserves the right to seek the Court's permission to take the deposition of **Donald R. Reid** at a later time, and State reserves the right to object. (Reid is Senior Coordinator for Security infrastructure, Bureau of Diplomatic Security since 2003 and was involved in early discussions about Mrs. Clinton using her BlackBerry and other devices to conduct official State Department business);and

9. Based on information learned during discovery, the deposition of **Mrs. Clinton** may be necessary. If Plaintiff believes Mrs. Clinton's testimony is required, it will request permission from the Court at the appropriate time.

C. At the conclusion of a deposition State may elect in good faith on the record to have a period of three business days following the time that a deposition transcript or audiovisual recording is made available to the parties within which to review those portions of the transcript or audiovisual recording that may contain classified information, information specifically exempted from disclosure by statute, or information about any pending FBI or law enforcement investigations, and, if necessary, to seek an order precluding public release, quotation or paraphrase of any inadvertently disclosed classified information, information specifically exempted from disclosure by statute, or information about any pending FBI or law enforcement investigations. The decision to elect the three-business-day period is in State's sole discretion and may not be challenged.

D. Discovery shall be conducted pursuant to the Federal Rules of Civil Procedure, subject to the scope and limitations herein.

E. Defendant shall serve its answers and any objections to the four interrogatories set forth in Plaintiff's proposed discovery plan, ECF No. 58-1 (Mar. 15, 2016), within 21 days of the Court's order. Those interrogatories include:

1. Who was responsible for processing and/or responding to record requests, including FOIA requests, concerning emails of Mrs. Clinton and other employees of the Office of the Secretary;

2. Who was responsible for the inventorying or other accounting of Mrs. Clinton's and Ms. Abedin's emails, records, and information;

3. Who was responsible for responding to Plaintiff's FOIA request from the date of submission to the present; and

4. Which State Department officials and employees had and/or used an account on the clintonemail.com system to conduct official government business.

F.  Discovery shall be completed within eight weeks of the Court's order. Plaintiff reserves the right to seek additional time if necessary, and Defendant reserves the right to object. Plaintiff must seek the Court's permission to conduct discovery beyond the depositions and the interrogatories identified above, and Defendant reserves the right to object.

**SO ORDERED.**

Emmet G. Sullivan
United States District Court
May 4, 2016.