**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JUDICIAL WATCH, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 13-CV-1363 (EGS)** |
| **U.S. DEPARTMENT OF STATE,** | |
| **Defendant.** | |

**NONPARTY DEPONENT BRYAN PAGLIANO'S**
**MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26(c)(1) and 45(d), nonparty deponent Bryan Pagliano, through counsel, respectfully moves the Court to enter the enclosed Protective Order. Mr. Pagliano is mindful that the Court's May 26, 2016 *sua sponte* Minute Order ("Sealing Order") was designed to limit additional briefing on this topic. However, Mr. Pagliano's deposition presents not only privacy considerations, but unique constitutionally-protected interests that require relief distinct from the Sealing Order. As set forth below, Mr. Pagliano will invoke his right under the Fifth Amendment and decline to testify at the deposition noticed for June 6, 2016. Given the constitutional implications, the absence of any proper purpose for video recording the deposition, and the considerable risk of abuse, the Court should preclude Judicial Watch, Inc. ("Judicial Watch") from creating an audiovisual recording of Mr. Pagliano's deposition.

Pursuant to LCvR 7(m), Mr. Pagliano's counsel conferred with counsel to all parties. Judicial Watch opposes the request. The Department of State does not take a position with respect to the instant motion.

## INTRODUCTION

Mr. Pagliano is a nonparty caught up in a lawsuit with an undisputed political agenda.[1] Mr. Pagliano is a private citizen, whom the Court characterized as a "State Department Schedule C employee who has been reported to have serviced and maintained the server that hosted the 'clintonemail.com' system during Mrs. Clinton's tenure as Secretary of State." Memorandum and Order at 13-14, May 4, 2016, ECF No. 73 (the "Discovery Order").

On May 4, 2016, the Court permitted Judicial Watch to obtain "limited discovery" from several individuals, including Mr. Pagliano, relating to "the creation and operation of clintonemail.com for State Department business, as well as the State Department's approach and practice for processing FOIA requests that potentially implicated former Secretary Clinton's and Ms. Abedin's emails and State's processing of the FOIA request that is the subject of this action." *Id.* at 12.

On May 13, 2016, Judicial Watch served Mr. Pagliano with a subpoena pursuant to Federal Rule of Civil Procedure 45, calling for Mr. Pagliano to appear and testify at a deposition noticed for June 6, 2016. The subpoena provides that the deposition will be recorded by "stenographic and audiovisual means." On May 21, 2016, Mr. Pagliano provided notice to Judicial Watch that, given the narrow scope of discovery articulated in the Discovery Order, he will decline to answer any and all questions that may be put to him in reliance on his rights under the Fifth Amendment. In an effort to avoid an unnecessary waste of resources and imposition on all parties, Mr. Pagliano requested that Judicial Watch withdraw the subpoena and excuse him from appearing. On May 24, 2016, Judicial Watch insisted upon Mr. Pagliano's appearance and

---

[1] The president of Judicial Watch "predicted that once the testimony is publicly released — perhaps as early as next week — it would show 'why the State Department and Mrs. Clinton have slow-rolled this and withheld a complete explanation of what went on with her email system. What we learned is going to be embarrassing to Mrs. Clinton and the administration — maybe more than embarrassing.'" Eric Lichtblau, *Ex-Aide to Hillary Clinton Testifies About Email Server*, N.Y. Times, May 18, 2016.

assertion of his rights on the record.  On May 25, 2016, Mr. Pagliano requested Judicial Watch's

assurance that the deposition would be recorded solely by stenographic means, given Mr.

Pagliano's stated intention to assert the Fifth Amendment.  On May 25, 2016, Judicial Watch

responded that it would oppose any motion for a protective order seeking to preclude audiovisual

recording.

## ARGUMENT

### I.       THE COURT SHOULD PROHIBIT JUDICIAL WATCH FROM CREATING AN AUDIOVISUAL RECORDING OF MR. PAGLIANO INVOKING HIS RIGHTS UNDER THE FIFTH AMENDMENT.

Federal Rule of Civil Procedure 26(c)(1) gives the Court wide latitude to issue an order

"to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense."  Rule 26(c)(1)(C) expressly permits protective orders "prescribing a discovery method

other than the one selected by the party seeking discovery."  To determine "whether a discovery

request is oppressive or imposes an undue burden, a court must balance the party's need for the

discovery against the potential hardship to the subject of the subpoena."  *Alexander v. FBI*, 186

F.R.D. 71, 75 (D.D.C. 1998).

As a threshold matter, given Mr. Pagliano's clear intention to assert his Fifth Amendment

rights, Judicial Watch can articulate no proper purpose—much less a "need"—for an audiovisual

recording of the deposition.  The deposition will be recorded by stenographic means and will be

available to the public, just not in the form Judicial Watch prefers.  The exclusive proper purpose

of an audiovisual recording is trial preparation.  *See, e.g.*, *Joy v. North*, 692 F.2d 880, 893 (2d

Cir. 1982) ("Discovery involves the use of compulsory process to facilitate orderly preparation

for trial, not to educate or titillate the public."); *see also Stern v. Cosby*, 529 F. Supp. 2d 417,

422-23 (S.D.N.Y. 2007) ("Videotaped depositions are permitted to facilitate the presentation of

evidence to juries; they are not intended to provide a vehicle for generating content for broadcast and other media.") (internal quotations omitted).  Audiovisual depositions are designed to record a deponent's demeanor in order to assist the trier of fact's determination of the credibility of the witness.  However, there is no credibility to judge in connection with a deponent's invocation of his Fifth Amendment right.

On the other hand, audiovisual depositions pose a serious danger to deponents invoking the Fifth Amendment, which guarantees "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence, . . . . [including] the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'"  *Spevack v. Klein*, 385 U.S. 511, 514-15 (1967).  As one district court noted:

> The video of a person repeatedly invoking the Fifth Amendment in response to a series of questions is indeed striking, which is why it makes such a good "soundbite."  If the Special Prosecutor's investigation results in criminal charges against the Movants, the prosecutor would be forbidden from even alluding to the fact that the defendant declined to testify.  But if the deposition video is broadcast on the local news, a large segment of the potential jury pool will have been exposed to the memorable image of the defendant doing just that.

*Hobley v. Burge*, 225 F.R.D. 221, 226 (N.D. Ill. 2004) (granting nonparty deponents' motion for entry of a protective order barring dissemination of deposition videotapes and transcripts).  *See also Felling v. Knight*, No. IP 01-0571-C-T/K, 2001 U.S. Dist. LEXIS 22827, at *9 (S.D. Ind. Dec. 21, 2001) ("[V]ideotapes are subject to a higher degree of potential abuse than transcripts. They can be cut and spliced and used as sound-bites on the evening news.").

In *Hobley*, the court was forced to prohibit further dissemination of the videotapes because the depositions were already recorded by audiovisual means and disseminated to the public.  While the Court's Sealing Order reduces the risk of dissemination, precluding video altogether is the only way to eliminate the potential harm to Mr. Pagliano.  Under the current

Sealing Order, audiovisual copies of the depositions will remain sealed only "until further order of the Court." Judicial Watch may move to unseal the materials at any time. Furthermore, in the event of a leak or data breach at the court reporting company, Mr. Pagliano would be hard-pressed to prevent further dissemination and republication of the video. Given that there is no proper purpose for videotaping the deposition in the first place, Judicial Watch's preference should yield to the significant constitutional interests at stake.

## CONCLUSION

For the foregoing reasons, Mr. Pagliano respectfully moves the Court to issue an Order precluding Judicial Watch from recording Mr. Pagliano's deposition by audiovisual means.


Dated:  June 1, 2016                          Respectfully submitted,


                                              By:  /s/ Connor Mullin
                                              Mark J. MacDougall (DC Bar No. 398118)
                                              Sean D'Arcy (DC Bar No. 440693)
                                              Constance O'Connor (DC Bar No. 490885)
                                              Connor Mullin (DC Bar No. 981715)
                                              AKIN GUMP STRAUSS HAUER & FELD LLP
                                              1333 New Hampshire Avenue, NW
                                              Washington, DC 20036
                                              (202) 887-4000
                                              (202) 887-4288 (fax)

                                              *Counsel for Bryan Pagliano*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 1st day of June 2016, a true and correct copy of the foregoing document was served upon the parties in this case via the Court's electronic filing system and is available for viewing and downloading from the ECF system.


 /s/ Connor Mullin               
Connor Mullin
DC Bar No. 981715