**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JUDICIAL WATCH, INC.,**<br><br>   Plaintiff,<br><br>  v.<br><br>**U.S. DEPARTMENT OF STATE,**<br><br>   Defendant. | Civil Action No. 13-CV-1363 (EGS) |

**NONPARTY DEPONENT BRYAN PAGLIANO'S**
**REPLY IN SUPPORT OF MOTION FOR ENTRY OF A PROTECTIVE ORDER**

  Judicial Watch's purported justifications for creating an audiovisual recording of Mr. Pagliano's deposition are without merit. As set forth below, the narrow scope of permissible discovery allows Mr. Pagliano to unequivocally represent to the Court that he will decline to answer every question asked of him in reliance on his right under the Fifth Amendment. In addition, any advantages associated with an audiovisual recording in a typical deposition are inapplicable here. Judicial Watch has failed to provide any assurances regarding the future use of a video recording and has expressly acknowledged the prospects of a motion to lift the Sealing Order, confirming the need for a protective order. Judicial Watch cannot articulate a legitimate, case-oriented purpose to video record the deposition. The Court should eliminate the burden on Mr. Pagliano's constitutional rights and the risk that a video recording may later be used for political purposes entirely unrelated to this matter.

**I. THERE IS NO PROPER PURPOSE FOR VIDEOTAPING MR. PAGLIANO REPEATEDLY INVOKING HIS FIFTH AMENDMENT RIGHT**

  As a threshold matter, given that Judicial Watch has been repeatedly notified that Mr. Pagliano will not testify, a persistent effort to videotape Mr. Pagliano invoking the Fifth Amendment would appear to violate the principles set forth in D.C. Legal Ethics Opinion 358

(2011). Nevertheless, Mr. Pagliano has not objected to being deposed, has cooperated in the scheduling of the deposition, and has not sought to limit the public's access to his responses under oath. He has merely requested that the Court limit the manner in which the deposition is recorded in light of well-founded constitutional concerns.

Judicial Watch incorrectly "presumes" that Mr. Pagliano "will answer certain questions that do not present any risk of prosecution." Opp'n 2. Here, the Court has authorized limited discovery[1] to clarify discrete factual matters and resolve what the Court described as the "narrow legal question" presented. Given the limited scope of permissible inquiry, Mr. Pagliano's counsel represents to the Court, as we have repeatedly represented to Judicial Watch, that Mr. Pagliano will assert the Fifth Amendment and will decline to answer each and every question after he identifies himself for the record. Under the highly speculative scenario suggested by Judicial Watch—in which Mr. Pagliano spontaneously decides to testify contrary to advice of counsel—Judicial Watch is free to suspend the deposition and seek relief from the Court. That will not be necessary here.

Judicial Watch summarizes the virtues of an audiovisual recording in a typical case, but those advantages are not present here. While "[f]acial expressions, voice inflections, intonation, gestures, and body language" certainly go directly to a deponent's credibility in the usual case, Judicial Watch does not explain why the Court would need to weigh the credibility of a deponent plainly invoking his Fifth Amendment right and declining to testify. Nor does Judicial Watch acknowledge, much less demonstrate, why a nonparty's demeanor while invoking the Fifth

---

[1] "The scope of permissible discovery shall be as follows: the creation and operation of clintonemail.com for State Department business, as well as the State Department's approach and practice for processing FOIA requests that potentially implicated former Secretary Clinton's and Ms. Abedin's emails and State processing of the FOIA request that is the subject of this action." Memorandum and Order at 12, May 4, 2016, ECF No. 73 (the "Discovery Order").

Amendment would shed light on whether the U.S. Department of State conducted a reasonable search for documents in response to Judicial Watch's FOIA request.

Judicial Watch fails to cite a single case addressing a witness who declines to answer on constitutional grounds,[2] let alone a case authorizing the use of an audiovisual recording over the objection of a deponent, who has provided notice that he will invoke the Fifth Amendment. After citing *Riley v. Murdock*, 156 F.R.D. 130, 131 (E.D.N.C. 1994), where the court permitted a video recording to "allow[] a *trial jury* to consider the demeanor of a witness while testifying," Judicial Watch acknowledges that "no jury will be impaneled in this case." Opp'n 2. Judicial Watch claims "this case is about the public's 'right to know details related to the creation, purpose and use of the clintonemail.com system.'" *Id.* at 3. It does not follow that an audiovisual recording of a nonparty witness, invoking his constitutional rights, is required to achieve this purpose. Judicial Watch does not identify any legitimate benefit of a video recording that would not be achieved by a traditional deposition transcript.

## II. AN AUDIOVISUAL RECORDING WOULD BURDEN MR. PAGLIANO'S CONSTITUTIONAL RIGHTS

Judicial Watch does not dispute the prospects of a forthcoming motion to lift the Sealing Order, but recommends that the Court address Mr. Pagliano's constitutional concerns "if and when a motion is made to lift the existing protective order." *Id.* at 2. However, the risk to Mr. Pagliano will be created as soon as the video is recorded. If, as Judicial Watch contemplates, the recording were unsealed, there would be, as one court put it, "an endless succession of attempts, not necessarily by [the news organization] alone, to obtain access to [the video] for purposes

---

[2] While the deponent in *Fanelli v. Centenary College*, 211 F.R.D. 268, 269 (D.N.J. 2002) initially "expected to invoke the Fifth Amendment or spousal immunity privileges in answer to certain questions," the basis for her objection to video recording was "her discomfort at being videotaped," "aggravation of certain psychiatric symptoms," and "stress, which would in turn result in her giving less than her best testimony." The court did not address the propriety of an audiovisual recording where a deponent intends to invoke the Fifth Amendment.

3

unrelated to the . . . case and an attendant drain on [the deponent's] own vigilance, resolve, and resources in fending them off." *Westmoreland v. CBS, Inc.*, 584 F. Supp. 1206, 1213 (D.D.C. 1984).

The very existence of an audiovisual recording presents a risk that the video will eventually be exploited to create a widely broadcast public inference of guilt. *See Hobley v. Burge*, 225 F.R.D. 221, 225 (N.D. Ill. 2004) (barring dissemination of police officer deposition videos where the officers repeatedly invoked their Fifth Amendment rights and where the dissemination of the videos was designed to create an inference of guilt). Judicial Watch argues, "[N]o jury will be impaneled in this case. Hence, no harm can result from a video being created." Opp'n 2. However, the danger from a constitutional perspective is not the effect of the video on the trier of fact in this civil case, but the potential tainting effect on the jury pool in a potential government enforcement action. *See*, *e.g.*, *Hobley*, 225 F.R.D. at 226.

While Judicial Watch fails to cite a single analogous case involving an assertion of the Fifth Amendment or the narrow discovery authorized by the Court, there is ample precedent for prohibiting the use of an audiovisual recording in similar circumstances.[3] *See Lobb v. United Air Lines*, No. 92-15846, 1993 U.S. App. LEXIS 17495, at *3 (9th Cir. July 8, 1993) (concluding that the district court did not abuse its discretion in deciding that "the added presentation value of the videotape format did not outweigh the additional burden to the defendants"); *see Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Nat'l Caucus of Labor Comm.*, 525 F.2d 323, 326 (2d Cir. 1975) (upholding a district court's order allowing a party to record a deposition solely by stenographic means); *see Citizens for Responsibility and Ethics in*

---

[3] Two of the cases in this string cite predate the 1993 amendment of Federal Rule of Civil Procedure 30. However, the rationales for the decisions remain applicable here. While Rule 30(b) has been expanded to more liberally permit video recordings, the Rule expressly contemplates that the court may "order[] otherwise." *See* FED. R. CIV. P. 30(b)(3)(A).

*Washington v. Cheney*, 580 F. Supp. 2d 168, 183-84 (D.D.C. 2008) (granting protective order prohibiting an audiovisual recording because the normal advantages of a videotaped deposition were not implicated in light of the narrow permissible discovery); *see Posr v. Roadarmel*, 466 F. Supp. 2d 527, 529 (N.D.N.Y. 2006) (issuing a protective order to prevent a videotaped deposition because of the "significant risk that plaintiff would misuse the videotape"); *see Westmoreland*, 584 F. Supp. at 1213 (denying permission to a news organization to videotape the deposition of a public figure where CBS would not agree unequivocally never to broadcast the tape and the deponent had a well-founded fear that CBS would use the videotape as broadcast material).

*Citizens for Responsibility and Ethics in Washington* is particularly instructive. There, the plaintiff "watchdog" organization alleged that the Office of Vice President, among other government agencies, inadequately preserved records under the Presidential Records Act ("PRA")—a claim that, like Judicial Watch's claim, would not typically involve discovery. 580 F. Supp. 2d at 183. This Court granted the plaintiff's request to depose the Vice President's Chief of Staff and the Director of the Presidential Materials Staff in the Office of Presidential Libraries. *Id.* at 176. The defendants moved for a protective order prohibiting the plaintiff from videotaping the depositions. *Id.* at 182. Granting the motion, this Court held:

> The normal advantages of videotaping depositions are not, however, implicated in this case. Rather, the Court granted limited discovery to resolve the factual and legal predicates for Defendants' narrow definitions associated with application of the PRA. Resolution of these issues does not involve the presentation of deposition testimony to a jury or require a fact-finder to weigh the credibility of competing witnesses, i.e., the situations in which videotaped depositions are typically helpful . . . . Put simply, being able to watch videotaped depositions will not assist the Court in resolving the discrete legal issues before it . . . . Although Rule 30(b) contemplates that, as a matter of ordinary course, parties may videotape depositions, the limited discovery at issue here is not a matter of ordinary course. The Court finds in its discretion that permitting Plaintiffs

5

>to videotape the deposition testimony . . . will not assist the Court in resolution of the discrete legal questions at hand, and the Court therefore orders that these two depositions shall not be videotaped.

*Id.* at 183-84. In light of Mr. Pagliano's clear intention to assert the Fifth Amendment, these considerations apply with even greater force to his prospective deposition.

## CONCLUSION

For the reasons set forth above and in Mr. Pagliano's opening brief, the Court should issue an Order precluding Judicial Watch from recording Mr. Pagliano's deposition by audiovisual means.

Dated: June 3, 2016                                   Respectfully submitted,


                                                      By: /s/ Mark J. MacDougall
                                                      Mark J. MacDougall (DC Bar No. 398118)
                                                      Sean D'Arcy (DC Bar No. 440693)
                                                      Constance O'Connor (DC Bar No. 490885)
                                                      Connor Mullin (DC Bar No. 981715)
                                                      AKIN GUMP STRAUSS HAUER & FELD LLP
                                                      1333 New Hampshire Avenue, NW
                                                      Washington, DC 20036
                                                      (202) 887-4000
                                                      (202) 887-4288 (fax)

                                                      *Counsel for Bryan Pagliano*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 3rd day of June 2016, a true and correct copy of the foregoing document was served upon the parties in this case via the Court's electronic filing system and is available for viewing and downloading from the ECF system.

                                                 /s/ Mark J. MacDougall
                                                Mark J. MacDougall
                                                DC Bar No. 398118