**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JUDICIAL WATCH, INC.,

     Plaintiff,

        v.

U.S. DEPARTMENT OF STATE,

     Defendant.

No. 1:13-cv-01363-EGS

**NON-PARTY HILLARY RODHAM CLINTON'S
OPPOSITION TO PLAINTIFF'S MOTION TO DEPOSE
HILLARY RODHAM CLINTON, CLARENCE FINNEY, AND JOHN BENTEL**

David E. Kendall (D.C. Bar No. 252890)
Katherine M. Turner (D.C. Bar No. 495528)
Amy Mason Saharia (D.C. Bar No. 981644)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Counsel for Non-Party Hillary Rodham
Clinton*

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

    A.    Secretary Clinton's Use of Personal E-mail ...............................................2

    B.    This Lawsuit..................................................................................................4

ARGUMENT ........................................................................................................................5

I.    JUDICIAL WATCH HAS NOT DEMONSTRATED A NEED TO DEPOSE
    SECRETARY CLINTON...........................................................................................5

    A.    Judicial Watch Already Has an Extensive Record About the Creation,
        Purpose, and Use of clintonemail.com. .......................................................5

    B.    The Questions Identified by Judicial Watch Are Either Answered or
        Irrelevant. ......................................................................................................7

        1.    *The purpose for the clintonemail.com system* ..............................7

        2.    *Secretary Clinton's continued use of the system* .........................9

        3.    *Secretary Clinton's claim over the records on the clintonemail.com
            system* ..............................................................................................10

        4.    *Secretary Clinton's inventorying of records upon completion of her
            tenure as secretary* .......................................................................12

        5.    *Secretary Clinton's choice of type of e-mail system to conduct
            official government business* .........................................................13

        6.    *Bryan Pagliano's role in creating and operating the
            clintonemail.com system* ...............................................................13

    C.    This Court Should Not Permit a Deposition of Secretary Clinton.........................14

II.    THE REQUESTED DISCOVERY IS FUTILE. ...............................................................15

III.    THIS COURT LACKS JURISDICTION TO ORDER DISCOVERY RELATED
      TO SECRETARY CLINTON'S USE OF PRIVATE E-MAIL IN THIS CASE. ..............16

    A.    *Kissinger* Controls This Case..................................................................17

i

Page

      B.     A General Intent To "Thwart" FOIA Does Not Render *Kissinger*
             Inapplicable............................................................................................................19

CONCLUSION............................................................................................................................20

## INTRODUCTION

This case arises from a FOIA request submitted by Plaintiff Judicial Watch, Inc. seeking records related to Ms. Huma Abedin's status as a special government employee.  On May 4, 2016, this Court permitted Judicial Watch to take "limited" discovery deemed relevant to the "narrow legal question" of whether the State Department, "in good faith, conduct[ed] a search reasonably calculated to uncover all relevant documents."  Docket Entry ("Dkt.") 73 at 1.  In particular, the Court authorized discovery related to "the creation, purpose and use of the clintonemail.com server" to determine whether there is evidence substantiating Judicial Watch's allegation that the State Department sought to "thwart" FOIA.  *Id.* at 1, 11.  As a result of this Court's order, Judicial Watch deposed seven current and former State Department employees.

In addition, Judicial Watch now has available to it a vast public record on this subject. Secretary Clinton testified publicly about her e-mail before the Benghazi Select Committee on October 22, 2015.  The testimony on this topic by Secretary Clinton's aides as well as other State Department employees to the Select Committee also has been publicly released.  In May 2016, the State Department Inspector General issued a report on e-mail records management in the Office of the Secretary, which included an assessment of practices during Secretary Clinton's tenure.  On July 5, 2016, FBI Director James Comey publicly announced the findings of the FBI's year-long investigation of a security referral from the Intelligence Community Inspector General related to Secretary Clinton's e-mail.  Director Comey later testified for more than four hours on this subject before the House Oversight and Government Reform Committee on July 7, 2016.

Despite this public testimony and the various investigative reports, Judicial Watch claims that it needs to depose Secretary Clinton, a former Cabinet Secretary, about six purportedly unanswered questions.  The record, however, already answers those questions or makes clear that Secretary Clinton has no personal knowledge to provide.  And many of Judicial Watch's proposed

topics are irrelevant to the issue for which it sought discovery: "whether the State Department and Mrs. Clinton deliberately thwarted FOIA." Dkt. 48 at 3; Dkt. 51 at 1. Indeed, Judicial Watch ignores that issue altogether in its Motion. That failure is unsurprising, as the FBI concluded after its year-long investigation that Secretary Clinton did not intend to conceal records from the public.

In any event, the discovery requested by Judicial Watch is futile. The ostensible purpose of the requested discovery is to determine whether this Court should compel Secretary Clinton to produce her @clintonemail.com account (including any personal e-mail) from her private e-mail server equipment to the State Department for further searching in response to Judicial Watch's FOIA request. Even if this Court had authority to issue such unprecedented relief, Secretary Clinton has nothing to produce, as the server equipment used to host her @clintonemail.com account is in the possession of the FBI.

Finally, for the sake of preserving any and all rights, counsel to Secretary Clinton respectfully submit that discovery is unwarranted in this case as a general matter. Under *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136 (1980), this Court lacks jurisdiction to compel disclosure of documents on Secretary Clinton's private server equipment—irrespective of any alleged intent to "thwart" FOIA—because those documents were outside the State Department's possession or control when Judicial Watch submitted its FOIA request.

## BACKGROUND

### A.      Secretary Clinton's Use of Personal E-mail

Secretary Clinton was Secretary of State from January 21, 2009 to February 1, 2013. Before becoming Secretary of State, she served in the Senate. When she arrived at the State Department, she already had been using a personal e-mail account for both Senate-related and personal e-mail. Mills Deposition ("Dep.") at 45:7–48:5; Abedin Dep. at 38:11–39:8. She continued that practice upon becoming Secretary of State. Mills Dep. at 45:7–48:5; Abedin Dep. at 38:11–39:8.

2

Secretary Clinton has stated that the reason she used a private e-mail address for work was the convenience of doing so.  Mills Dep. at 172:20–173:4; Ex. B at 188 (Testimony of Huma Abedin to the Benghazi Select Committee); *see also* Ex. D at 1.  The FBI confirmed as a result of its investigation that Secretary Clinton used private e-mail for the sake of convenience.  *See* Ex. C at 20, 74 (Testimony of James Comey to the House Oversight and Government Reform Committee).

Although e-mail was not her primary means of communication, *see* Ex. A at 285, 401 (Testimony of Hillary Rodham Clinton to the Benghazi Select Committee); Mills Dep. at 257:8–258:19; Abedin Dep. at 157:2–158:6, Secretary Clinton did use e-mail for State Department business.  During virtually all of her tenure as Secretary of State, Secretary Clinton used a personal e-mail account, hdr22@clintonemail.com, for work-related and personal e-mail.[1]  Ex. A at 335.  During her tenure, that account was hosted on server equipment in the Clinton home in Chappaqua, New York.  Mills Dep. at 264:21–265:12; Dkt. 48-6, at 237.  The server equipment was set up for the use of former President Clinton's staff, and Secretary Clinton's e-mail account was added to it.  Ex. A at 403; Mills Dep. at 259:2–13.  In 2013, after Secretary Clinton left the State Department, the account was transitioned to equipment managed by Platte River Networks, a private company.  Ex. A at 403; Mills Dep. at 103:8–104:2; Dkt. 48-6, at 237.

Secretary Clinton's practice was to e-mail State Department officials on their state.gov e-mail accounts.  Ex. A at 408; *see also* Abedin Dep. at 120:19–121:3.  She corresponded with numerous State Department officials—including Legal Adviser Harold Koh, Under Secretary for Management Patrick Kennedy (the Department's senior agency official for records management), and other senior Department officials.  *See, e.g.*, Ex. E; Kennedy Dep. at 10:7–12, 61:11–14.  In

---

[1] Secretary Clinton briefly used an AT&T account after initially arriving at the State Department. Mills Dep. at 47:17–49:12.

other words, "it wasn't a secret that she was using this e-mail account to be communicating with U.S. government officials, because they were receiving e-mails from her."  Abedin Dep. at 52:9–12.  Secretary Clinton has testified that her understanding was that "all of [her] work-related emails to [government e-mail] accounts were being captured and preserved."  Ex. A at 425.

In the fall of 2014, the State Department requested that Secretary Clinton and other former Secretaries of State provide copies of federal records that may not otherwise have been preserved in the Department's record-keeping system.  Dkt. 18-1.  Secretary Clinton's attorneys oversaw the process of responding to the Department's request.  Ex. A at 401.  Secretary Clinton sought to produce all e-mails that "could be possibly construed as work-related."  Ex. A at 402; Dkt. 22-1.  As a result of her attorneys' review, in December 2014 counsel to Secretary Clinton provided the State Department with approximately 55,000 pages of e-mails.  *See* Dkt. 22-1; Dkt. 26-1, ¶ 13.

### B.    This Lawsuit

Judicial Watch submitted the FOIA request at issue in this case on May 21, 2013, nearly four months after Secretary Clinton's tenure as Secretary of State ended.  *See* Dkt. 1.  After State produced responsive documents, Judicial Watch dismissed the case with prejudice in March 2014.  Dkt. 12.  In March 2015, the parties agreed to reopen the case.  Dkt. 14.  The State Department then searched the e-mails that Secretary Clinton had provided to the Department in December 2014 using agreed-upon search terms.  Dkt. 47-2, ¶ 43.  No responsive e-mails were located.  *Id.* ¶ 45.

After the Department moved for summary judgment, Judicial Watch moved for discovery under Rule 56(d).  This Court granted that motion, concluding that "questions surrounding the creation, purpose and use of the clintonemail.com server must be explored before this Court can decide, as a matter of law, whether the Government has conducted an adequate search in response to Judicial Watch's FOIA request."  Dkt. 73 at 1.  Judicial Watch does not appear to contest the

adequacy of the Department's search of the 55,000 pages of e-mails that Secretary Clinton pro-

vided to it.   Instead, Judicial Watch contends that FOIA requires the Department to attempt to

acquire and search Secretary Clinton's @clintonemail.com account, including any personal e-mail,

that once resided on her private e-mail server equipment.   *See* Feb. 23, 2016 Hr'g Tr. at 45:6–22,

47:1–6.

## ARGUMENT

Judicial Watch has not demonstrated a need to depose Secretary Clinton, a former Cabinet

Secretary.   Although Judicial Watch identifies six questions it would like to ask Secretary Clinton,

the voluminous record available to Judicial Watch—which includes Secretary Clinton's sworn

testimony—answers many of those questions.   The remainder are irrelevant to the narrow issue on

which limited discovery was permitted.   The requested deposition, moreover, would be an exercise

in futility.   No matter how much discovery Judicial Watch takes, the ultimate relief it seeks—

production and search of Secretary Clinton's clintonemail.com account by either the State Depart-

ment or Secretary Clinton—is impossible to obtain in this case, as Secretary Clinton does not have

possession or control of the equipment that housed that account.   Finally, this Court lacks jurisdic-

tion to order the requested discovery.   Because the State Department did not possess or control the

e-mail account when Judicial Watch submitted the at-issue request (or at any time subsequent to

the request), it could not withhold e-mails from that account even if, as Judicial Watch incorrectly

claims, there was an intent to "thwart" FOIA generally.

## I.   JUDICIAL WATCH HAS NOT DEMONSTRATED A NEED TO DEPOSE SEC-RETARY CLINTON.

### A.   Judicial Watch Already Has an Extensive Record About the Creation, Purpose, and Use of clintonemail.com.

Discovery in FOIA cases is "rare."   *Schrecker v. U.S. DOJ*, 217 F. Supp. 2d 29, 36–37

(D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003); *see Thomas v. Dep't of Health & Human*

*Servs.*, 587 F. Supp. 2d 114, 115 n.2 (D.D.C. 2008); *Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 25 (D.D.C. 2000).   This Court already has taken the unusual step of permitting Judicial Watch to take limited discovery related to the creation, purpose, and use of clintonemail.com.   The Benghazi Select Committee, the State Department Inspector General, and the FBI also have conducted inquiries and made findings on this subject.   The findings of those inquiries have been made public, which had not occurred when this Court first permitted discovery. *See* Feb. 23, 2016 Hr'g Tr. at 57:5–17.   Judicial Watch now has a voluminous record related to Secretary Clinton's use of private e-mail.   That record includes:

- Secretary Clinton's public testimony during an eleven-hour hearing before the Benghazi Select Committee on October 22, 2015, *see* Ex. A;

- The testimony of current and former State Department witnesses before the Benghazi Select Committee, including Under Secretary for Management Patrick Kennedy, the former director of Information Resource Management for the Executive Secretariat, and Secretary Clinton's senior aides Cheryl Mills, Huma Abedin, and Jacob Sullivan[2];

- Depositions of six fact witnesses in this case, including Ms. Mills and Ms. Abedin;

- A deposition of the State Department's Rule 30(b)(6) witness in this case;

- Verified interrogatory responses from the State Department in this case, *see* Dkt. 97-1;

- A January 2016 report by the State Department Inspector General regarding FOIA processes for requests involving the Office of the Secretary, *see* Ex. F;

- A May 2016 report by the State Department Inspector General regarding e-mail records management in the Office of the Secretary, which covers the period of Secretary Clinton's tenure, *see* Ex. G;

- The State Department's production to Judicial Watch of documents cited in the May 2016 State Department Inspector General report, *see* Dkt. 97-2;

- The June 28, 2016 Report of the Select Committee on the Events Surrounding the 2012 Terrorist Attack in Benghazi;

---

[2] Http://democrats-benghazi.house.gov/work/interview-transcripts.

- FBI Director Comey's July 5, 2016 public remarks regarding the findings of the FBI investigation, which included a voluntary interview of Secretary Clinton[3];

- FBI Director Comey's testimony to the House Oversight and Government Reform Committee on July 7, 2016, *see* Ex. C; and

- 30,322 e-mails and corresponding e-mail attachments provided by counsel to Secretary Clinton to the State Department available to the public on the Department's website.

**B.    The Questions Identified by Judicial Watch Are Either Answered or Irrelevant.**

"Discovery in a FOIA case . . . is not a punishment for a deficient agency performance." *Asarco, Inc. v. U.S. EPA*, No. 08-1332 (EGS/JMF), 2009 WL 1138830, at *2 (D.D.C. Apr. 28, 2009).  A FOIA requester is entitled to discovery only "when there has emerged a genuine issue of material fact which can only be resolved by an evidentiary hearing." *Id.* at *1.  The ostensible reason for requesting discovery here is to resolve a dispute of fact regarding whether the State Department deliberately "thwarted" FOIA through Secretary Clinton's use of clintonemail.com. *See* Dkt. 48 at 3; *see also infra* Part III.  Judicial Watch ignores this fundamental question in its motion.  Instead, it simply lists a series of topics related to Secretary Clinton's e-mail—completely divorced from the ultimate question of fact—for which it claims to want testimony from Secretary Clinton.  This Court granted discovery, however, to resolve "a narrow legal question."  Dkt. 73 at 1.  Many of Judicial Watch's topics bear no rational connection to that narrow question.  And the voluminous record available to Judicial Watch already provides answers to those that do.

### 1.    The purpose for the clintonemail.com system

Secretary Clinton has repeatedly stated that the purpose of using the clintonemail.com system was convenience, as a continuation of her Senate practice.  *See* Mills Dep. at 172:20–173:4;

---

[3]    Https://www.fbi.gov/news/pressrel/press-releases/statement-by-fbi-director-james-b.-comey-on-the-investigation-of-secretary-hillary-clintons-use-of-a-personal-e-mail-system.

Ex. B at 188; *see also* Ex. D at 1.  FBI Director Comey testified before Congress that Secretary Clinton told the FBI in her interview that she used the clintonemail.com system for the sake of convenience.  *See* Ex. C at 74.  According to Director Comey, "Our best information is that she set it up as a matter of convenience.  It was an existing system her husband had and she decided to have a domain on that system."  Ex. C at 20.

Moreover, there is no evidence that the purpose of the clintonemail.com system was to thwart FOIA, as Judicial Watch claims.  Secretary Clinton herself has testified that her practice was to e-mail State officials on their government accounts, and she thought that those e-mails were being captured and preserved in the Department's record-keeping systems.[4]  *See* Ex. A at 408, 425. Ms. Mills shared that belief.  *See* Mills Dep. at 183:9–184:4, 218:3–7, 238:16–239:21, 261:4–10. Even if that understanding was mistaken, it does not amount to an intent to evade FOIA.  Notably, Secretary Clinton's use of a private e-mail account was transparent to State Department officials, including those responsible for records management.  *See supra* pp.3–4.  The fact that she corresponded with the Department's Legal Adviser and Under Secretary for Management belies any notion that the e-mail system was intended to thwart FOIA.

Although Secretary Clinton corresponded widely with senior officials at the Department, there is no evidence that anyone expressed concern to Secretary Clinton or her aides about the record-keeping implications of her use of personal e-mail.  Neither Ms. Abedin nor Ms. Mills recalled anyone raising such concerns with them or the Secretary, or participating in conversations on that topic.  Mills Dep. at 183:9–16, 190:15–21; Abedin Dep. at 114:4–9, 117:18–118:3, 135:18–

---

[4] That belief, even if mistaken, was not unreasonable.  As the State Department Inspector General reported, when Secretary Colin Powell's representative asked Department staff "whether they needed to do anything to preserve the Secretary's emails [on a private e-mail address] prior to his departure," the staff "responded that the Secretary's emails would be captured on Department servers because the Secretary had emailed other Department employees."  Ex. G at 21.

138:22; Ex. B at 123, 161.  Ambassador Stephen Mull, who was ultimately responsible for FOIA activities in the Executive Secretariat during much of Secretary Clinton's tenure, testified that he did not hear of any concerns about Secretary Clinton's e-mail not being subject to FOIA.  Mull Dep. at 28:6–15, 80:1–11; *see also* Mull Dep. at 86:7–16; Kennedy Dep. at 58:1–4.

Given these facts, it is not surprising that Secretary Clinton's closest aides, Ms. Mills and Ms. Abedin, testified that they have "[a]bsolutely" no "reason to believe that Secretary Clinton used Clintonemail.com to conduct government business because she or anyone else at the State Department was seeking to avoid FOIA."  Mills Dep. at 263:7–11; Abedin Dep. at 164:22–165:6, 195:15–19, 220:22–221:3.  And, after a year-long investigation, the FBI did *not* find that Secretary Clinton used a private server "because she wanted to shield communications from Congress and the public."  Ex. C at 20.  Rejecting that proposition, Director Comey testified, "Our best information is that she set it up as a matter of convenience."  Ex. C at 20.  Judicial Watch has provided no basis to conclude that a deposition of Secretary Clinton in this case would produce information different than what she and others have already provided, and discovery in a FOIA case is not available to "afford[] [the plaintiff] an opportunity to pursue a bare hope of falling upon something" that might support its claim.  *Military Audit Project v. Casey*, 656 F.2d 724, 751–52 (D.C. Cir. 1981) (quotation marks omitted).

### 2. *Secretary Clinton's continued use of the system*

Judicial Watch also claims that it needs to know why Secretary Clinton continued using the clintonemail.com system despite supposed problems and disruptions.  Its underlying assumption—that the clintonemail.com system had more problems than the state.gov system—is not supported by the record.  Ms. Abedin has testified that there were just as many technical issues with the state.gov system as with the clintonemail.com system.  *See* Ex. B at 175; *see also* Abedin Dep. at 84:10–22 ("[I]t was both Clinton e-mail and State.gov having the communications challenges.").

Ms. Abedin also testified that Secretary Clinton did not switch to a state.gov e-mail account because the technical issues with clintonemail.com were resolved.  Abedin Dep. at 193:21–194:6.

Judicial Watch points to a series of e-mails related to technical difficulties.  Secretary Clinton, however, was not a party to most of those e-mails, and Judicial Watch has deposed many of the persons who were.  Although Judicial Watch highlights an e-mail to Ms. Abedin mentioning that a State-issued Blackberry would be subject to FOIA, *see* Mot. at 7, Ms. Abedin testified that she did not "remember discussing this with the Secretary."[5]  Abedin Dep. at 167:10–170:8.  Judicial Watch has no need to depose Secretary Clinton about other people's e-mails.

Judicial Watch identifies only one communication involving Secretary Clinton, but that document disproves any intent to thwart FOIA.  When Ms. Abedin suggested that Secretary Clinton obtain a state.gov e-mail address in 2010, the Secretary did not express concern that her work-related e-mails would be subject to FOIA.  *See* Dkt. 97-2, Doc. B.  She stated only that she did not want her "personal" e-mails to be accessible.  *Id.*; *see* Abedin Dep. at 188:17–193:9.  Judicial Watch's suggestion that it needs to depose Secretary Clinton to find out what she meant is not credible.  Judicial Watch has already deposed Ms. Abedin about this exchange, *see* Abedin Dep. at 180:19–194:6, and the meaning of Secretary Clinton's statement is obvious on its face.

### 3. Secretary Clinton's claim over the records on the clintonemail.com system

Citing *Competitive Enterprise Institute v. Office of Science and Technology Policy*, No. 15-5128, --- F.3d ----, 2016 WL 3606551 (D.C. Cir. July 5, 2016), Judicial Watch argues that it needs to determine whether Secretary Clinton "claimed any personal right or exclusive control

---

[5] Moreover, Ms. Abedin explained that, when she stated that the proposed State Blackberry arrangement did not make sense, she was referring not to FOIA but to the fact that State was proposing to add "not just one but two additional devices."  Abedin Dep. at 176:6–177:17.

over the emails on the clintonemail.com system." Mot. at 8. *Competitive Enterprise Institute*, however, involves a FOIA request for the records of a current agency head. *See* 2016 WL 3606551, at *1. This case involves a request for the e-mails of a *former* agency head. *Competitive Enterprise Institute* thus does not govern this case. *See id.* at *5 (Srinivasan, J., concurring) (explaining that the case does not "involve[] records held by someone having no present affiliation with the agency at the time of the FOIA request"). Moreover, even if it did, the Court of Appeals expressly pointed out that it was not deciding what relief was appropriate. *See id.* at *4 ("We make clear that we are not ordering the specific disclosure of any document."). It did not order that the agency head was required to give her agency unfettered access to all of her personal e-mails (as opposed to reviewing her e-mails herself), as Judicial Watch requests here.

Even if relevant, *Competitive Enterprise Institute* would not warrant discovery. The relief Judicial Watch seeks is an order requiring the State Department to obtain Secretary Clinton's *entire* e-mail account to search for any additional e-mails. That e-mail account, which was hosted on private server equipment, was possessed privately under a claim of right, and has never been the property of or in the possession or control of the State Department.

Judicial Watch further claims that it needs to know whether Secretary Clinton deleted work-related e-mails during her tenure as Secretary—*i.e.*, before Judicial Watch submitted its FOIA request. That question is irrelevant to this FOIA case. FOIA does not obligate agencies to retain records; the obligation to retain records arises from the Federal Records Act, which does not confer a private right of action. *See Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 152 (1980); *see also infra* Part III. Finally, Judicial Watch claims that it needs to know Secretary Clinton's understanding of her FOIA obligations, but Secretary Clinton has already testified to that very issue. *See supra* pp.3-4.

### 4.    *Secretary Clinton's inventorying of records upon completion of her tenure as secretary*

Judicial Watch further argues that it needs information about Secretary Clinton's "inventorying of records" at the end of her tenure.  Mot. at 9.  It highlights a "meeting between [Clarence] Finney, Ms. Abedin and other personnel from the Office of the Secretary about what records Secretary Clinton and her staff were allowed to take with them when they left the State Department."  Mot. at 9.  But Secretary Clinton was not at that meeting.  *See* Abedin Dep. at 141:5–7.  Moreover, Secretary Clinton was not the person inventorying her records.  Her staff was performing that task.  *See* Abedin Dep. at 141:8–143:10.  Ms. Abedin has already explained why "record management officials apparently were not advised about official, government records on the clintonemail.com system when the secretary transitioned out of the department."  Mot. at 10.  She testified:

> Q  Do you know why nobody informed Mr. Finney about the State-related e-mails on Secretary Clinton's Clintonemail.com account? . . .
>
> A  I – as I think I've mentioned earlier, it is not anything that occurred to us.  We all wish we could go back and that not be the case.  It did not occur to those of us who were involved.
>
> Q  And is that the same answer?  I'm specifically asking for the time period during the transition process prior to leaving the State Department.
>
> A  Yes, ma'am.  I understand.  It did not – it did not occur to us.

Abedin Dep. at 145:1–16; *see also* Abedin Dep. at 219:5–14; Ex. B at 138, 188.  Similarly, Ms. Mills testified:

> Q  So you never thought about how were the federal records that were stored on her e-mail account, how would the State Department have access to that after she left? . . .
>
> A  I assumed, I now know inaccurately, that records that were on a State system were ones that were kept forever.  Obviously I've come to learn that that's not the case.  And I thought since the Secretary's practice was to e-mail people on their State [accounts], that there was resident in the department a set of records with respect to her work at the department.  And I thought they would have been there.

Q  But what about – but what about the federal records that were the e-mails between the Secretary and other people outside of the State Department; what about those e-mails?

A  I wish I had thought about that subset. . . . I didn't think about that.

Mills Dep. at 239:7–240:17.

### 5.      *Secretary Clinton's choice of type of e-mail system to conduct official government business*

Judicial Watch next argues that it needs to know why Secretary Clinton switched from a supposedly "archived" commercial AT&T e-mail account to the "non-archived" clintonemail.com account early in her tenure as Secretary of State.  Mot. at 11.  This argument is both factually unfounded and wholly irrelevant.  Secretary Clinton produced to the State Department 55,000 pages of e-mails from her clintonemail.com account.  As Judicial Watch knows, she was unable to retrieve or produce e-mails from the supposedly "archived" AT&T account that she used early in her tenure.  *See* Dkt. 43; Ex. H (Letter from David Kendall to Patrick Kennedy (Oct. 8, 2015)).

### 6.      *Bryan Pagliano's role in creating and operating the clintonemail.com system*

Finally, Judicial Watch claims that it needs to know how Bryan Pagliano received a job at the State Department and what work he performed on the clintonemail.com system.  Mot. at 12.  It makes no attempt to explain how this information is in any way relevant to the question of intent to thwart FOIA.  Even if this topic were relevant, Judicial Watch fails to establish that Secretary Clinton has any relevant knowledge.  Ms. Mills testified that to her knowledge Secretary Clinton did *not* request that Mr. Pagliano receive a job at the Department.  *See* Mills Dep. at 154:20–22.  Moreover, Judicial Watch has identified documents related to Mr. Pagliano's hiring at the Department, *see* Mills Ex. 8, and none of them suggests that Secretary Clinton had any involvement.  There is no basis to conclude that she has any information on these (irrelevant) questions.

### C.     This Court Should Not Permit a Deposition of Secretary Clinton.

On this record, Judicial Watch's request for more discovery under Rule 56(d) is an improper "fishing expedition[]." *Doe v. U.S. DOJ*, 660 F. Supp. 2d 31, 54 (D.D.C. 2009) (quotation marks omitted); *see also Exxon Corp. v. FTC*, 663 F.2d 120, 128 (D.C. Cir. 1980) ("It is not the intent of Rule 56 to preserve purely speculative issues of fact . . . ."). Judicial Watch has answers to the questions that are relevant to the disputed issue of fact in this case. The fact that Judicial Watch does not like those answers does not warrant more discovery.

This Court should be especially wary of Judicial Watch's claim that it needs to depose Secretary Clinton, a former Cabinet Secretary. As a general matter, "subjecting a cabinet officer to oral deposition is not normally countenanced." *Peoples v. U.S. Dep't of Agriculture*, 427 F.2d 561, 567 (D.C. Cir. 1970); *see also Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *In re Papandreou*, 139 F.3d 247, 253 (D.C. Cir. 1998). For that reason, the Court of Appeals requires a litigant to show "extraordinary circumstances" before permitting a deposition of a high-ranking government official. *See In re United States*, No. 14-5146, 2014 U.S. App. LEXIS 14134, at *2 (D.C. Cir. July 24, 2014) (per curiam) (granting a writ of mandamus to quash the deposition of the Secretary of Agriculture absent a showing of "extraordinary circumstances"); *see also, e.g.*, *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013); *In re United States*, 624 F.3d 1368, 1374 (11th Cir. 2010). This Court has extended this requirement to requests to depose former high-ranking government officials. *See, e.g.*, *FDIC v. Galan-Alvarez*, No. 1:15-mc-00752(CRC), 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015); *Willingham v. Ashcroft*, 226 F.R.D. 57, 65 (D.D.C. 2005); *see also In re United States*, 542 F. App'x 944, 949 (Fed. Cir. 2013) (suggesting that the requirement would apply in the case of former high-ranking officials).

Litigants are not typically permitted to depose high-ranking government officials if the requested information can be obtained elsewhere, including from lower-ranking government officials.  *See, e.g.*, *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (per curiam); *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999).  For all the reasons already set forth, Judicial Watch has obtained the requested information from other current and former government officials, as well as from Secretary Clinton's prior testimony to the Benghazi Select Committee.  A deposition of Secretary Clinton in this case would be entirely cumulative and unnecessary.[6]

## II.   THE REQUESTED DISCOVERY IS FUTILE.

The requested deposition is inappropriate for an independent reason.  FOIA authorizes courts to grant only limited relief:  a court can "enjoin the agency from withholding agency records and . . . order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  Judicial Watch sought discovery to determine whether the Department should be required to search Secretary Clinton's e-mail account to identify and produce work-related e-mails, if any, responsive to Judicial Watch's request.  *See* Dkt. 48, at 3–5; Feb. 23, 2016 Hr'g Tr. at 47:1–6.  Even if this Court had authority to order Secretary Clinton to produce her clintonemail.com e-mails or her private e-mail server equipment to the Department (it does not),[7]

---

[6] At a minimum, if the Court decides, notwithstanding the arguments herein, that further discovery is necessary, counsel to Secretary Clinton respectfully urge this Court to allow Secretary Clinton to provide information in writing.  Secretary Clinton has already testified or spoken about some of the topics for which Judicial Watch claims to need discovery and has virtually no knowledge of others.  Requiring her to sit for a deposition for the purpose of repeating her prior statements or stating that she has no knowledge of certain topics would serve no useful purpose.

[7] Although a court may have authority under FOIA to compel nonparties to return documents responsive to a FOIA request where an agency transferred those documents to evade a preexisting FOIA request, *see Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28, 44 (D.D.C. 1998), Judicial Watch has identified no authority for the altogether different proposition that FOIA authorizes courts to compel nonparties to produce to an agency entire personal e-mail accounts that may or may not contain responsive documents.  As the Department has explained, the obligation to determine whether an e-mail is a federal record requiring preservation remains with the

that relief is impossible as a practical matter.  In connection with the FBI investigation, Secretary Clinton voluntarily provided to the FBI the server equipment that housed her clintonemail.com account for the proper purpose of facilitating the FBI's security-related investigation.  *See* Dkt. 24-1, at Ex. E.  She does not have access to her clintonemail.com account.  Even if this Court were to issue a subpoena to Secretary Clinton, she has nothing in her possession or custody to produce.  Judicial Watch itself has acknowledged that its request for discovery could be "a moot point" in precisely this circumstance.  Feb. 23, 2016 Hr'g Tr. at 11:5–16.

Judicial Watch has represented that it has filed a FOIA request with the FBI.  *See* Oct. 6, 2015 Hr'g Tr. at 39:2–7.  That request is the only avenue by which Judicial Watch can request the documents it seeks.  *See DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.C. Cir. 2015) (holding that where documents are transferred to another agency after receipt of a FOIA request for a proper reason, FOIA "does not compel the agency [that received the FOIA request] to take further action in order to produce that document" (quotation marks omitted)); *see also* Dkt. 47-1 at 16–17.

## III. THIS COURT LACKS JURISDICTION TO ORDER DISCOVERY RELATED TO SECRETARY CLINTON'S USE OF PRIVATE E-MAIL IN THIS CASE.

Finally, counsel to Secretary Clinton, who have not previously had the chance to address this Court, respectfully urge the Court to reconsider its ruling granting discovery as a general matter.  We submit that the Court lacks jurisdiction to order production of documents from Secretary Clinton's private e-mail server equipment, which was not in the Department's possession or control when Judicial Watch submitted its FOIA request.  Judicial Watch's allegation of an intent to "thwart" FOIA, even if true, would not alter that fact.

---

employee.  *See* Dkt. 49 at 8–11.  At Secretary Clinton's direction, her counsel made that determination with respect to her e-mails and provided 55,000 pages of e-mails to the Department.

### A.    *Kissinger* Controls This Case.

A court has jurisdiction to "devise remedies and enjoin agencies" under FOIA only if the agency has (1) "improperly"; (2) "withheld"; (3) "agency records." *Kissinger*, 445 U.S. at 150 (1980) (quotation marks omitted).  These requirements are jurisdictional.  *See id.*; *see also Bureau of Nat'l Affairs, Inc. v. U.S. DOJ*, 742 F.2d 1484, 1488 (D.C. Cir. 1984).

The Supreme Court construed the statutory term "withheld" in *Kissinger*.  In that case, Secretary of State Henry Kissinger had removed transcriptions of his telephone conversations from the State Department and deeded them to the Library of Congress under terms that prohibited public access for 25 years.  445 U.S. at 139–42.  The plaintiffs requested the transcriptions under FOIA after Kissinger had deeded them to the Library of Congress.  *Id.* at 143.  Kissinger and the Library of Congress were "holding the documents under a claim of right."  *Id.* at 155.  The Court held that, even assuming that Kissinger's removal of the records violated the Federal Records Act, the district court lacked authority to order their return to the State Department.  *Id.* at 148, 155.

The Supreme Court observed that FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and re-tained."  *Id.* at 152.  The Federal Records Act—not FOIA—governs an agency's obligation to retain records, "even though the agency's failure to do so deprives the public of information which might have otherwise been available to it."  *Id.*  As the Court explained, "[i]f the agency is not required to create or to retain records under the FOIA, it is somewhat difficult to determine why the agency is nevertheless required to retrieve documents which have escaped its possession, but which it has not endeavored to recover."  *Id.*  It concluded:  "Congress did not mean that an agency improperly withholds a document which has been removed from the possession of the agency prior to the filing of the FOIA request.  In such a case, the agency has neither the custody or control

17

necessary to enable it to withhold." *Id.* at 150–51.  An agency's "refusal to resort to legal remedies to obtain possession" is not a "withholding" of the record.  *Id.* at 151.

The Court thus held that "a 'withholding' must . . . be gauged by the time at which the request is made since there is no FOIA obligation to retain records prior to that request." *Id.* at 155 n.9.  Applying this standard, the Court readily found that the State Department had not "withheld" Kissinger's transcriptions because it did not have "possession or control of the documents at the time the requests were received." *Id.* at 155.  Both the Court of Appeals and this Court have repeatedly applied *Kissinger* to hold that an agency "withholds" agency records only if the records are in its possession or control at the time a FOIA request is made.  *See, e.g.*, *Founding Church of Scientology v. Regan*, 670 F.2d 1158, 1163–64 (D.C. Cir. 1981) (reversing a district court order compelling agency to retrieve documents transferred to a third party); *Piper v. U.S. DOJ*, 294 F. Supp. 2d 16, 22 (D.D.C. 2003) (holding that an agency is not required to reconstruct deleted records because "FOIA is triggered by agencies having actual possession of the requested documents"), *aff'd per curiam*, 222 F. App'x 1 (D.C. Cir. 2007); *Judicial Watch, Inc. v. Dep't of Commerce*, 34 F. Supp. 2d 28, 44 (D.D.C. 1998) ("[T]he status of a particular document *at the time the FOIA request is submitted* determines whether the unreasonable failure to produce that document is an unlawful withholding."); *see also Competitive Enter. Inst.*, 2016 WL 3606551, at *5 (Srinivasan, J., concurring) (suggesting that an agency does not have possession or control of documents "held by a person unaffiliated with the agency at the time of the request").

*Kissinger* squarely governs this case.  When Judicial Watch submitted its FOIA request in May 2013, Secretary Clinton was not employed by the State Department.  Secretary Clinton held her privately owned server equipment under "a claim of right" and later voluntarily provided that equipment to the FBI for a proper purpose.  *Kissinger*, 445 U.S. at 155.  Judicial Watch has not

offered any colorable argument that the equipment or e-mail account was under the Department's possession or control at the time of the FOIA request, and the Department has disclaimed that it was. *See* Lang 30(b)(6) Dep. at 108:21–109:11; Dkt. 97-1, at 5–6. This Court lacks jurisdiction to compel production of Secretary Clinton's e-mails.

## B.    A General Intent To "Thwart" FOIA Does Not Render *Kissinger* Inapplicable.

Judicial Watch has argued that *Kissinger* is inapplicable when an agency official seeks to thwart FOIA as a general matter. Dkt. 48, at 4–5. Counsel to Secretary Clinton respectfully submit that this reading of *Kissinger* is incorrect.

In footnote nine of *Kissinger*, the Supreme Court "raised but did not decide whether the 'possession or control' requirement 'might be displaced in the event that it was shown that an agency official purposefully routed a document out of agency possession in order to circumvent a FOIA request.'" *Nat'l Sec. Archive v. Archivist of the U.S.*, 909 F.2d 541, 546 (D.C. Cir. 1990) (per curiam) (quoting *Kissinger*, 445 U.S. at 155 n.9). That footnote does not mean that the "possession or control" test is displaced when an agency official removes agency records to prevent their release to *future* FOIA requesters as a general matter. That reading of the footnote is incompatible with the rest of the *Kissinger* decision. As *Kissinger* recognizes, FOIA "does not obligate agencies to create or retain documents." 445 U.S. at 152; *see also Whitaker v. CIA*, 31 F. Supp. 3d 23, 46 (D.D.C. 2014) (holding that a failure to retain documents "does not create liability . . . under FOIA"). Except with respect to certain categories of documents not applicable here, an agency's obligation under FOIA arises only *once it receives a FOIA request*. *See* 5 U.S.C. § 552(a)(3)(A). Because FOIA imposes no obligations until receipt of a FOIA request, an agency official cannot "thwart" FOIA by removing agency records *before* the agency receives a request.

Judicial Watch's expansive reading of footnote nine also conflicts with the Supreme Court's decision in *U.S. DOJ v. Tax Analysts*, 492 U.S. 136 (1989). In that case, the Supreme Court observed that materials are "agency records" for purposes of FOIA only if they are "in the agency's control at the time the request is made." *Id.* at 145–46. Invoking *Kissinger* footnote nine, the Court explained that disputes about whether an agency controls requested materials could arise where requested materials are "'purposefully routed . . . out of agency possession in order to circumvent [an impending] FOIA request,'" or are "'wrongfully removed by an individual after a request is filed.'" *Id.* at 146 n.6 (quoting *Kissinger*, 445 U.S. at 155 n.9) (alterations in original).

The Court thus clarified that the question left open by *Kissinger* is whether the "possession or control" standard should be displaced where an agency official removes materials that are the subject of an "impending" (*i.e.*, imminent) FOIA request. That standard requires a close temporal connection between an official's removal of records and a *specific* FOIA request. That standard cannot be satisfied here. Judicial Watch's FOIA request was submitted nearly four months after Secretary Clinton left the State Department, and there is no evidence that Secretary Clinton or anyone else at the Department knew that Judicial Watch would submit the request, let alone intended to circumvent it. Absent such evidence, *Kissinger* footnote nine is irrelevant.

## CONCLUSION

For the foregoing reasons, counsel to Secretary Clinton respectfully request that this Court deny Judicial Watch's motion for permission to depose Secretary Clinton.

Respectfully submitted,

/s/ David E. Kendall

David E. Kendall (D.C. Bar No. 252890)
Katherine M. Turner (D.C. Bar No. 495528)
Amy Mason Saharia (D.C. Bar No. 981644)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
dkendall@wc.com
kturner@wc.com
asaharia@wc.com

*Counsel for Non-Party Hillary Rodham Clinton*

July 12, 2016

**CERTIFICATE OF SERVICE**

I, David E. Kendall, counsel for Non-Party Hillary Rodham Clinton, certify that, on July 12, 2016, a copy of this Opposition to Plaintiff's Motion to Depose Hillary Rodham Clinton, Clarence Finney, and John Bentel was filed via the Court's electronic filing system, and served via that system upon all parties required to be served.

/s/ David E. Kendall
David E. Kendall