

**REPORTERS COMMITTEE**

FOR FREEDOM OF THE PRESS

1156 15th St. NW, Suite 1250
Washington, D.C. 20005
(202) 795-9300
www.rcfp.org

Bruce D. Brown
Executive Director
bbrown@rcfp.org
(202) 795-9301

STEERING COMMITTEE

STEPHEN J. ADLER
*Reuters*

SCOTT APPLEWHITE
*The Associated Press*

WOLF BLITZER
*CNN*

DAVID BOARDMAN
*Temple University*

CHIP BOK
*Creators Syndicate*

MICHAEL DUFFY
*Time*

RICHARD S. DUNHAM
*Tsinghua University, Beijing*

ASHLEA EBELING
*Forbes Magazine*

MANNY GARCIA
*Naples Daily News*

SUSAN GOLDBERG
*National Geographic*

JAMES GRIMALDI
*The Wall Street Journal*

LAURA HANDMAN
*Davis Wright Tremaine*

JOHN C. HENRY
*Freelance*

KAREN KAISER
*The Associated Press*

DAVID LAUTER
*Los Angeles Times*

DAHLIA LITHWICK
*Slate*

TONY MAURO
*National Law Journal*

JANE MAYER
*The New Yorker*

ANDREA MITCHELL
*NBC News*

SCOTT MONTGOMERY
*NPR*

MAGGIE MULVIHILL
*Boston University*

JAMES NEFF
*The Philadelphia Inquirer*

CAROL ROSENBERG
*The Miami Herald*

THOMAS C. RUBIN
*Quinn Emanuel*

CHARLIE SAVAGE
*The New York Times*

MARGARET LOW SMITH
*The Atlantic*

JENNIFER SONDAG
*Bloomberg News*

PIERRE THOMAS
*ABC News*

SAUNDRA TORRY
*USA Today*

JUDY WOODRUFF
*PBS / The NewsHour*

*Senior Advisor:*
PAUL STEIGER
*ProPublica*

*Affiliations appear only
for purposes of identification.*

July 14, 2016

<u>**VIA ECF**</u>

The Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, DC 20001

> Re:    *Judicial Watch, Inc. v. Dep't of State* (No. 1:13-cv-01363)

Dear Judge Sullivan,

We write on behalf of the Reporters Committee for Freedom of the Press and the other 18 undersigned media organizations regarding the Court's May 26, 2016 Minute Order directing that all audiovisual copies of depositions taken in the above-referenced case "be sealed until further order of the Court."

As this Court is well aware, this Freedom of Information Act ("FOIA") lawsuit is a matter of substantial interest to the news media and the public. It arises out of a 2013 FOIA request by plaintiff, Judicial Watch, Inc. ("Judicial Watch"), to the Department of State for copies of certain agency records relating to Huma Abedin, an advisor to former Secretary of State and now presumptive Democratic presidential nominee Hillary Clinton. Memorandum and Order at 2, *Judicial Watch, Inc. v. Dep't of State*, No. 1:13-cv-01363 (D.D.C. May 4, 2016), ECF No. 73. Although the case was dismissed in 2014, it was reopened in June of 2015 after *The New York Times* reported that former Secretary Clinton had used a nongovernmental email account to conduct government business while Secretary of State. *Id.*

On May 4, 2016, the Court entered an order approving the parties' joint proposal for limited discovery concerning "the creation and operation of clintonemail.com for State Department business, as well as the State Department's approach and practice for processing FOIA requests that potentially implicated former Secretary Clinton's and Ms. Abedin's emails and State's processing of the FOIA request that is the subject of this action." *Id.* at 12. The order indicates that Judicial Watch intended to take depositions of certain current or former State Department employees. *Id.* at 13. The order further states that Judicial Watch has reserved the right to seek the Court's permission to depose Donald R. Reid, the Senior Coordinator for Security infrastructure, Bureau of Diplomatic Security, as well as former Secretary Clinton, if necessary. *Id.* at 14.

On May 25, 2016, Cheryl Mills, who was Chief of Staff to Secretary Clinton, filed a motion for a protective order pursuant to Federal Rule of

Civil Procedure 26(c)(1) preventing Judicial Watch from publicizing all or any portion of any audiovisual recording made of Ms. Mills' deposition in this case.  Motion by Non-Party Deponent Cheryl Mills, *Judicial Watch, Inc. v. Dep't of State*, No. 1:13-cv-01363 (D.D.C. May 25, 2016), ECF No. 79 (the "Mills Motion").  Following briefing by the parties, on May 26, 2016, the Court entered a minute order granting the Mills Motion and sealing all audiovisual copies of her deposition.  Minute Order, *Judicial Watch, Inc. v. Dep't of State*, No. 1:13-cv-01363 (D.D.C. May 26, 2016) (the "May 26 Order").  The Court also ordered *sua sponte* that "all audiovisual copies of depositions taken in this case shall be sealed until further order of the Court."  *Id.*

To date, in addition to Ms. Mills and Ms. Abedin, Judicial Watch has deposed Ambassador Lewis Lukens, former Deputy Assistant Secretary of State and Executive Director of the State Department's Executive Secretariat, Ambassador Stephen D. Mull, former Executive Secretary of the State Department, Bryan Pagliano, a State Department IT official, and Patrick F. Kennedy, Under Secretary for Management at the State Department.  On July 8, 2016, Judicial Watch filed a motion seeking permission to depose former Secretary Clinton and two other individuals.  That motion is set to be heard by the Court on July 18, 2016.

We understand that all of the depositions taken to date have been videotaped. Pursuant to the Court's May 26 Order, however, audiovisual copies of those depositions are not available to the public.

I.      **The press and the public have a powerful interest in access to audiovisual copies of the depositions taken in this case.**

There is a "strong, legitimate public interest on the part of the citizenry to have unfettered access to court proceedings, particularly when they involve elected officials and the performance of their governmental responsibilities." *Flaherty v. Seroussi*, 209 F.R.D. 295, 300 (N.D.N.Y. 2001); *see also Condit v. Dunne*, 225 F.R.D. 113, 120 (S.D.N.Y. 2004) (noting "added public interest" where "the statements at issue [in the deposition] address the propriety of a then-sitting United States Congressman in the discharge of his duties"); *Padberg v. McGrath-McKechnie*, No. CV-00-3355 RJD SMG at *2 (E.D.N.Y. April 27, 2005) (finding that public access to the deposition of former New York City Mayor Rudolph Giuliani was warranted where the lawsuit involved allegations related to his actions as mayor).  The same is true with respect to court proceedings involving appointed government officials.  *See Hawley v. Hall*, 131 F.R.D. 578, 585 (D. Nev. 1990); *Laugier v. City of New York*, No. 13-CV-6171 (JMF), 2014 WL 6655283 at *2 (S.D.N.Y. Nov. 24, 2014); *see also In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 n.5 (9th Cir. 2011) (instructing courts considering the public disclosure of discovery documents to consider "whether a party benefitting from the order of confidentiality is a public entity or official; and . . . whether the case involves issues important to the public" (citation omitted)).

The matter before this Court speaks directly to the actions of government officials in the performance of their duties.  All of the individuals whom Judicial Watch has

deposed to date, as well as those whom it may depose in the future, are current or former government officials.  Further, under this Court's May 4 Order, the scope of their testimony in this case is limited to matters relating to the performance of their official duties.  The use of a nongovernmental email account by the former Secretary of State, and the actions of other State Department officials and employees who themselves used, were aware of, or assisted in the establishment of that nongovernmental email system, are matters of legitimate interest to the public.

That former Secretary Clinton is now the presumptive Democratic nominee for President of the United States only heightens the public's already strong interest in access to the audiovisual copies of the depositions taken in this matter.  *See* Order Granting Motion of Non-Party Press Organization for Limited Purpose Intervention and Order Unsealing Court Records at 10–11, *Cohen v. Trump*, No.1:13-cv-02519-GPC-WVG (S.D. Cal. May 27, 2016), ECF No. 211 (finding "a strong argument that the public interest in understanding the judicial process is heightened" in a case against "the front-runner for the Republican nomination in the 2016 presidential race").  During the course of her presidential campaign, former Secretary Clinton has repeatedly been called upon to answer questions relating to her use of a nongovernmental email account and server while Secretary of State,[1] and she has addressed the issue on a number of occasions, including on her campaign website.[2]

FBI Director James Comey's recent July 5, 2016 announcement that the FBI has recommended that no criminal charges be brought against former Secretary Clinton— despite her "extremely careless" email practices, as characterized by Director Comey— has reinvigorated public interest in the former Secretary's use of a nongovernmental email account, and sparked additional public discussion and debate about the FBI's investigation.[3]  In response to Mr. Comey's announcement, leaders in the Republican party have indicated that they intend to make former Secretary Clinton's use of

---

[1] *See, e.g.,* The American Presidency Project, *Democratic Candidates Debate in Las Vegas, Nevada* (Oct. 13, 2015), available at http://bit.ly/28SzMwM; The American Presidency Project, *Democratic Candidates Debate in Des Moines, Iowa* (Nov. 14, 2015), available at http://bit.ly/28R40xn; The American Presidency Project, *Democratic Candidates Debate in Durham, New Hampshire* (Feb. 4, 2016), available at http://bit.ly/28VeZbl; The American Presidency Project, *Democratic Candidates Debate in Flint, Michigan* (Mar. 6, 2016), available at http://bit.ly/28WrCDM; The American Presidency Project, *Democratic Candidates Debate in Miami, Florida* (Mar. 9, 2016), available at http://bit.ly/28YHbde.

[2] *See* Updated:  The Facts About Hillary Clinton's Emails, available at https://perma.cc/W765-Q8HA (last visited June 23, 2016).

[3] *See, e.g.*, Mark Landler & Eric Lichtblau, *F.B.I. Director James Comey Recommends No Charges for Hillary Clinton on Email*, N.Y. Times (July 5, 2016), available at http://nyti.ms/29k3gCm; The Associated Press, *AP Fact Check: Hillary Clinton Email Claims Collapse Under FBI Investigation*, NBC News (July 6, 2016), available at http://nbcnews.to/29h9U9j; Burgess Everett, *Comey to testify on Clinton email probe Thursday*, Politico (July 6, 2016), available at https://perma.cc/A7CM-MST9.

nongovernmental email a central issue in the presidential campaign.[4]  And because no criminal charges will be brought against former Secretary Clinton, proceedings in this case, including deposition testimony, may be one of the public's only opportunities to obtain a full understanding of former Secretary Clinton's use of a nongovernmental email account and server.

Where, as here, "litigation involves matters of significant public concern," the public "interest in access to court proceedings in general may be asserted more forcefully . . . ." *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 101 F.R.D. 34, 38 (C.D. Cal. 1984).  Because a central issue in this case—former Secretary Clinton's use of a nongovernmental email account while at the State Department—is a central issue in the ongoing presidential race, full access to the depositions taken in this matter is of heightened importance to the public.

## II.   Cold transcripts of the depositions, alone, provide incomplete information to the public.

The Court's May 26 Order permits public access to the written transcripts of depositions taken in this case.  However, access to cold transcripts, alone, deprives the public of critical context and other information vital to understanding the deponents' testimony.  Access to the audiovisual recordings would give both the press and the public a more accurate and complete record of the testimony given by public officials in this case.

A written transcript provides only the deponent's words, but "words themselves may carry only a limited meaning."  *Fanelli v. Centenary College*, 211 F.R.D. 268, 270 (D.N.J. 2002).  "People communicate in other ways in addition to the words used:  facial expressions, voice inflection and intonation, gestures, 'body language', and notes between counsel and deponent may all express a message to persons present at a deposition as to which a typed transcript is completely silent."  *Riley v. Murdock*, 156 F.R.D. 130, 131 (E.D.N.C. 1994); *see also Rice's Toyota World, Inc. v. Southeast Toyota Distributors, Inc.*, 114 F.R.D. 647, 649 (M.D.N.C. 1987) (stating that a witness's demeanor may be "reflected in his motions, expressions, voice inflections, etc.").  A written transcript omits such vital nonverbal information and, as a result, necessarily limits the reader's understanding of that testimony.  In the words of the U.S. Supreme Court, "a cold record cannot recreate testimony.  A witness may be credible on paper but not on the stand."  *Harvard v. Florida*, 459 U.S. 1128, 1134 (1983).

Audiovisual recordings, in contrast, permit the viewer "to utilize a greater portion of his perceptive processes then when merely reading or listening to a stenographic deposition."  *Rice's Toyota World*, 114 F.R.D. at 649.  Such recordings show a deponent's nonverbal communication, including facial expressions, eye contact, hand

---

[4] *See, e.g.,* Burgess Everett & Nick Gass *, Republicans react to FBI: 'The rules are different for the Clintons'*, Politico (July 5, 2016), available at https://perma.cc/E4G6-UPK2; *Republicans respond to Comey's Clinton announcement*, CBS News (July 5, 2016), available at http://cbsn.ws/29LLXIZ.

movements and gestures, posture and body orientation, voice pitch, and speed of speech. Rebecca White Berch, *A Proposal to Amend Rule 30(B) of the Federal Rules of Civil Procedure:  Cross-Disciplinary and Empirical Evidence Supporting Presumptive Use of Video to Record Depositions*, 59 Fordham L. Rev. 347, 362–66 (1990); *see also United States v. Tunnell*, 667 F.2d 1182, 1188 (5th Cir. 1982); *Fanelli*, 211 F.R.D. at 270; *Rice's Toyota World*, 114 F.R.D. at 649.  Audiovisual recordings also show "delays in response, which the transcript would not" as well as "any coaching by counsel, such as by notes, gestures, or whispered instructions inaudible to a court reporter."  *Riley*, 156 F.R.D. at 131.

These forms of nonverbal communication not only provide important context for a witness's statements, they are essential indicators of a witness's credibility and veracity. Courts have long recognized that the ability to assess the demeanor of a witness appearing in court gives the factfinder a "unique advantage in evaluating evidence." *Sandidge v. Salen Offshore Drilling Co.*, 764 F.2d 252, n.6 (5th Cir. 1985).  Similarly, because audiovisual recordings allow the viewer to better assess a witness's demeanor and credibility, courts around the country have acknowledged their superiority to cold transcripts.  *See, e.g.*, *United States v. Bell*, 795 F.3d 88, 96 (D.C. Cir. 2015) ("It is recognized that a videotaped deposition is generally more effective than reading a transcript for the presentation of deposition testimony"); *Sandidge*, 764 F.2d at n.6; *Fanelli*, 211 F.R.D. at 270; *Paisley Park Enters., Inc. v. Uptown Prod.*, 54 F.Supp.2d 347, 349 (S.D.N.Y. 1999); *Riley*, 156 F.R.D. at 131; *Weiss v. Wayes*, 132 F.R.D. 152, 154 (M.D. Pa. 1990).  For the same reason, at least one scholar has concluded that "audio- and videotaped depositions are inherently more accurate and trustworthy than stenographically recorded depositions."  Berch, *supra* at 349.  Just as a jury or court obtains more accurate, complete information from viewing a videotaped deposition as opposed to merely reading a cold transcript, so too does the press and the public.

## III.     The deponent government officials have not and cannot establish good cause to seal audiovisual recordings of their depositions in this case.

Given the strong, legitimate interest of the public in this case—a case that implicates directly the conduct of government officials, including former Secretary Clinton, in their official capacities—the press and the public have a particularly powerful interest in access to the audiovisual recordings of the depositions taken in this matter.  No good cause exists to deprive the public of access to the audiovisual recordings of those depositions.[5]

---

[5] Where "good cause" is established, Federal Rule of Civil Procedure 26(c) authorizes the Court to issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  The burden is on the party seeking such a protective order to demonstrate good cause.  *See New York v. Microsoft Corp.*, 206 F.R.D. 19, 23 (D.D.C. 2002). While this standard applies to protective orders governing material merely exchanged by the parties in discovery in a civil matter, when such material is submitted to a court it becomes presumptively accessible to the public under both the First Amendment and common law.  *See United States v. El-Sayegh*, 131 F.3d 158, 160–62 (D.C. Cir. 1997).  Accordingly, to the extent that audiovisual recordings of the depositions at issue, or portions thereof, are submitted to the

Only one deponent, Ms. Mills, moved for a protective order restricting access to the audiovisual recording of her deposition.  She did so on the basis of her contention that the recording might be used for partisan political purposes against former Secretary Clinton in connection with her current presidential campaign.  Mills Motion at 2; *see also* Reply in Support of Motion by Non-Party Deponent Cheryl Mills at 1, *Judicial Watch, Inc. v. Dep't of State*, No. 1:13-cv-01363 (D.D.C. May 26, 2016), ECF No. 82 (the "Mills Reply").  According to Ms. Mills, the audiovisual recording of her deposition could be subject to manipulation, and to being cut into sound bites that she asserts could "mislead the public regarding the full substance of her testimony and obscure the true purpose of this proceeding."  Mills Reply at 2; Mills Motion at 3.

While the testimony of Ms. Mills and the other deponents in this case is unquestionably the subject of legitimate public interest only heightened by the current presidential race, that is not a reason to restrict public access.  To the contrary, it is a ground for greater public access.  As the U.S. Supreme Court has stated, "[d]iscussion of public issues and debates on the qualifications of candidates are integral to the operation of the system of government established by our Constitution."  *Buckley v. Valeo,* 424 U.S. 1, 14 (1976).  For that reason, courts are "especially unwilling to issue a protective order merely to spare the [individual] embarrassment where, as here, the [individuals] are public officials and the issues in the case are matters of public concern."  *Morrow v. City of Tenaha*, Civil Action No. 2-08-cv-228-TJW, 2010 WL 3927969 at *4 (E.D. Tex. 2010).

While the audiovisual recordings of the depositions in this case may very well become part of public and partisan political discourse, that does not support the issuance of a protective order.  *See Flaherty*, 209 F.R.D. at 229.  Moreover, "[w]hile sound bites are a recognized Achilles heel of videotaped depositions, the fact that the media may edit a tape that may or may not be released by the parties does not warrant a protective order barring all public dissemination of the videotape."  *Condit*, 225 F.R.D. at 118 (internal citations omitted).  Indeed, contrary to Ms. Mills' assertion that the audiovisual recording of her deposition could "mislead the public," access to the full audiovisual recordings of depositions taken in this case will provide the public with the most complete and accurate record of the deponents' testimony.  *See, e.g.*, Berch, *supra* at 349; *see also Constand v. Cosby*, 112 F.Supp. 3d 308, 319 (E.D. Pa. 2015) (noting that it is not unfair to unseal deposition testimony that provides the deponents "version of certain events surrounding this lawsuit—in his own words").  Indeed, release of the entirety of the video of the deposition will provide the public with the fullest context and most robust understanding of Ms. Mills' testimony.

For the foregoing reasons, and given the public's strong interest in this matter, the undersigned media organizations respectfully urge the Court to revisit its *sua sponte* order directing that all audiovisual copies of depositions taken in the above-referenced

---

Court, any restrictions on public access to those court documents must meet more rigorous standards.  *See, e.g.*, *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996); *Washington Post v. Robinson*, 935 F.2d 282, 290 (D.C. Cir. 1991).

case "be sealed until further order of the Court."  Thank you for the Court's consideration.

Respectfully,

The Reporters Committee for Freedom of the Press

American Society of News Editors

The Associated Press

Association of Alternative Newsmedia

Cable News Network, Inc.

CBS Broadcasting, Inc.

Chicago Tribune Company LLC

Dow Jones & Company, Inc.

The E.W. Scripps Company

First Look Media Works, Inc.

Fox News Network LLC

Hearst Corporation

Los Angeles Times Communications LLC

National Press Photographers Association

NBC News, a division of  NBCUniversal Media, LLC

Online News Association

Radio Television Digital News Association

Society of Professional Journalists

The Washington Post

Respectfully submitted by,

Bruce D. Brown (D.C. Bar No. 457317)
   *Executive Director*
Katie Townsend (D.C. Bar No. 1026115)
   *Litigation Director*
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street N.W.
Suite 1250
Washington, D.C. 20005
202.795.9300