**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
JUDICIAL WATCH,                )
                               )
              Plaintiff,       )
                               )   Civil Action No. 13-1363
        v.                     )
                               )
                               )
U.S. DEPARTMENT OF STATE       )
                               )
              Defendant.       )
_____)
```

<u>**MEMORANDUM OPINION**</u>

Pending before the Court is Judicial Watch's motion for permission to depose three additional individuals in this Freedom of Information Act ("FOIA") case. Pl.'s Mot., ECF No. 97. This Court previously granted Judicial Watch's motion for discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, agreeing that questions surrounding the creation, purpose and use of the clintonemail.com server needed to be explored through limited discovery before the Court could decide, as a matter of law, whether the State Department conducted an adequate search in response to Judicial Watch's FOIA request. *See* Mem. Order, ECF No. 73 at 1; Hr'g Tr., ECF No. 59 at 78: 9-25. For the following reasons, and upon

consideration of the parties' submissions,[1] oral argument heard

on July 18, 2016, and the applicable law, the motion is **GRANTED**

**IN PART** and **DENIED IN PART.** Specifically: (1) Judicial Watch may

serve interrogatories on Former Secretary of State Hillary

Clinton; (2) Judicial Watch may not depose Mr. Clarence Finney;

and (3) Judicial Watch may depose Mr. John Bentel.

I.   **Background**

A. **Procedural History**

A detailed procedural history is provided in this Court's May

4, 2016 Memorandum and Order. Mem. Order, ECF No. 73 at 2-5. For

the purpose of the pending motion and in summary, Judicial Watch

filed this lawsuit on September 10, 2013 seeking to obtain,

pursuant to FOIA, certain employment records related to former

State Department employee Huma Abedin. Compl., ECF No. 1. The

State Department then conducted a search, produced certain non-

exempt records, and the parties stipulated to the dismissal of

the case on March 14, 2014. Mem. Order, ECF No. 73 at 3. After

media reports that Secretary Clinton and members of her staff

used personal email accounts to conduct agency business, and

because those records may not have been covered in the State

Department searches for documents responsive to this FOIA

request, this Court granted Judicial Watch's unopposed motion to

---

[1] This includes the recent notices filed in this case at ECF Nos.
115, 116, 117, 120.

re-open this case. Minute Order, June 19, 2015. The State Department then searched records Secretary Clinton voluntarily produced from the clintonemail.com system, among others, and produced responsive documents. Def.'s Mot. Summ. J., ECF No. 47 at 10, 14; Mem. Order, ECF No. 73 at 3-4.

### B. The Court Authorizes Limited Discovery

Following its production of documents, the State Department, on November 13, 2015, filed a motion for summary judgment. ECF No. 47. In response, Judicial Watch moved for discovery, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, for two reasons: (1) "to uncover and present admissible evidence to the court about whether the State Department and Secretary Clinton deliberately thwarted FOIA"; and (2) to learn about "the system itself to determine possible methods for recovering whatever responsive records may still exist." Pl.'s Mot. Discovery, ECF No. 48 at 3.

Based on key facts related to the clintonemail.com server, the Court concluded that Judicial Watch had raised sufficient questions about whether the State Department processed the FOIA request in good faith, and granted Judicial Watch's motion for discovery.[2] Mem. Order, ECF No. 73 at 9. The Court authorized

---

[2] The Court denied the State Department's Motion for Summary Judgment without prejudice in light of the Court's consideration of the parties' discovery proposals. Minute Order, Mar. 16, 2016.

limited discovery on "the creation and operation of clintonemail.com for State Department business, as well as the State Department's approach and practice for processing FOIA requests that potentially implicated former Secretary Clinton's and Ms. Abedin's emails and State's processing of the FOIA request that is the subject of this action." *Id.* at 12.

### C. Discovery Conducted to Date

Consistent with the parties' joint proposal for limited discovery,[3] Judicial Watch deposed seven current and former State Department employees:

- Karin Lang, Director of the Executive Secretariat Staff at the State Department, who testified on behalf of the State Department as a 30(b)(6) deponent "regarding the processing of FOIA requests, including Plaintiff's FOIA request, for emails of Secretary Clinton and Ms. Abedin both during Secretary Clinton's tenure as Secretary of State and after";

- Stephen D. Mull, Executive Secretary of the State Department from June 2009 to October 2012;

- Lewis A. Lukens, Executive Director of the Executive Secretariat from 2008 to 2011;

- Patrick F. Kennedy, Under Secretary for Management since 2007 and the Secretary of State's principal advisor on management issues, including technology and information services;

- Cheryl D. Mills, Secretary Clinton's Chief of Staff throughout her four years as Secretary of State;

---

[3] The Court recognized that the State Department did not waive its objection to discovery.

- Huma Abedin, Secretary Clinton's Deputy Chief of Staff and a senior advisor to Secretary Clinton throughout her four years as Secretary of State, who also had an email account on clintonemail.com; and

- Bryan Pagliano, State Department Schedule C employee who reportedly set up and maintained the server that hosted the "clintonemail.com" system during Secretary Clinton's tenure as Secretary of State.[4]

Mem. Order, ECF No. 73 at 13-14. The State Department also answered interrogatories and voluntarily produced documents. Def.'s Opp'n, ECF No. 102 at 1-2.

### D. Other Inquiries Involving the Clintonemail.com System

Since the Court granted Judicial Watch's request, a large public record related to Secretary Clinton's use of the clintonemail.com server has become available, including, but not limited to: (1) testimony by Secretary Clinton and current and former State Department employees before the U.S. House of Representatives Select Committee on the Events Surrounding the 2012 Terrorist Attack in Benghazi ("Benghazi Committee"); (2) depositions of six fact witnesses, including the State Department's Rule 30(b)(6) witness, and verified interrogatories; and (3) the State Department Office of

---

[4] Mr. Pagliano invoked his Fifth Amendment rights and did not substantively answer any questions posed to him during his deposition.

Inspector General ("OIG") Report regarding email management in the Office of the Secretary. Clinton Opp'n, ECF No. 102 at 6.

On July 5, 2016, the Federal Bureau of Investigation ("FBI") announced that it had completed its investigation of Secretary Clinton's use of the personal email server as Secretary of State. *Id.* at 6. FBI Director James Comey stated that as part of that investigation the FBI "discovered several thousand work-related emails" that had not been returned to the State Department. *Id.* at 7. In response to the State Department's request that the FBI transmit the emails to it,[5] the FBI, on July 21, 2016, and on August 5, 2016, provided the State Department with the records. Def.'s Status Report, ECF No. 122 at 1-2. The State Department anticipates completing its initial search of all the documents by no later than August 26, 2016. *Id.* at 3.

## II. Discussion

### A. The Purpose of FOIA and Standard for Discovery

FOIA "was enacted to provide a statutory right to public access to documents and records held by agencies of the federal government." *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 05-cv-2078, 2006 WL 1518964, at *2 (D.D.C. June 1, 2006)(citing *Pratt v. Webster*, 673 F.2d 408, 413 (D.C.

---

[5] The Court applauds the State Department's request that the FBI provide those documents to State. *See* FBI Letter, ECF No. 105.

Cir. 1982)). "As such, FOIA embodies a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Pratt v. Webster,* 673 F.2d at 413. *See also Dep't of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 7-8 (2001) (noting that the basic objective of FOIA is disclosure, not secrecy).

"FOIA actions are typically and appropriately resolved on summary judgment." *Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175, 180 (D.D.C. 2013)(citing *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011)). To prevail, the "'agency must show beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007)(quoting *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983)).

Discovery is rare in a FOIA action. *Thomas v. FDA*, 587 F. Supp. 2d 114, 115 n.2 (D.D.C. 2008). As this Court has stated,

> Typically, FOIA actions are resolved without discovery. *Voinche v. FBI,* 412 F.Supp.2d 60, 71 (D.D.C.2006). *See also Pub. Citizen Health Research Group v. FDA,* 997 F. Supp. 56, 72 (D.D.C.1998) ("Discovery is to be sparingly granted in FOIA actions."). However, discovery may be granted when plaintiff has made a sufficient showing that the agency acted in bad faith, *Carney v. DOJ,* 19 F.3d 807, 812 (2d Cir.1994), has raised a sufficient question as to the agency's good faith,

7

> *Inc. v. Export-Import Bank,* 108 F. Supp. 2d
> 19, 25 (D.D.C.2000), or when a factual dispute
> exists and the plaintiff has called the
> affidavits submitted by the government into
> question, *Pub. Citizen Health Research Group,*
> 997 F. Supp. at 72-73. On the other hand,
> discovery is not to be granted when discovery
> is sought for the "bare hope of falling upon
> something that might impugn the affidavits"
> submitted by the government. *Founding Church
> of Scientology v. NSA,* 610 F.2d 824, 836-37 n.
> 101 (D.C.Cir.1979).

*Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 05-cv-2078, 2006 WL 1518964, at *3 (D.D.C. June 1, 2006)(footnote omitted).

When discovery is granted in a FOIA case, the scope is necessarily limited to the genuine issue(s) in dispute. *See Weisberg v. U.S. Dep't of Justice*, 627 F. 2d 365, 371 (D.C. Cir. 1980). "A Rule 56[d] motion for additional discovery is not designed to allow 'fishing expeditions.'" *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 54 (D.D.C. 2009)(quoting *Graham v. Mukasey*, 608 F. Supp. 2d. 50, 54 (D.D.C. 2009)).

Pursuant to this authority, and based on the record in this case, the Court granted limited discovery, noting that "[b]ased on information learned during discovery, the deposition of Mrs. Clinton may be necessary." Mem. Order, ECF No. 73 at 14. The Court then authorized Judicial Watch to request permission to depose Secretary Clinton should it believe that to be necessary. *Id.*

8

## B. Standard for Deposing a Current or Former High-Ranking Government Official

If the Court determines that Secretary Clinton's testimony is necessary, the Court must then consider the request to depose her in light of the "apex doctrine." Judicial Watch and Secretary Clinton[6] agree that, pursuant to that doctrine, the Court must determine whether "extraordinary circumstances" are present before ordering a current or former high-ranking government official to sit for a deposition. Pl.'s Mot., ECF No. 97 at 12-13; Pl.'s Reply, ECF No. 106 at 12-14; Clinton Opp'n, ECF No. 102 at 17-18. Specifically, the party seeking to depose a current or former high-ranking government official must demonstrate "'[e]xceptional circumstances justifying the deposition——for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means.'"[7] *Federal Deposit Insurance Co. v. Galan-Alvarez*, No. 15-MC-752, 2015 WL 5602342, at *3-*4 (D.D.C. Sept.

---

[6] The State Department does not take a position on this argument. *See generally* Def.'s Opp'n, ECF No. 103.

[7] The three primary rationales for the apex doctrine are: (1) respecting the integrity of the administrative process; (2) allowing government officials to perform their tasks without disruption; and (3) to not discourage individuals from public service. *Federal Deposit Insurance Co. v. Galan-Alvarez*, No. 15-MC-752, 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015).

4, 2015) (quoting *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013)) (other citations omitted); *see also In re United States*, Civ. No. 14-5146, 2014 U.S. App LEXIS 14134, at *2 (D.C. Cir. July 24, 2014) (granting writ of mandamus to quash the deposition of the Secretary of Agriculture absent a showing of "extraordinary circumstances").

### C. Judicial Watch May Obtain Secretary Clinton's Testimony

Pursuant to FOIA, the ultimate question this Court will need to decide is whether the State Department can "show beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Morley*, 508 F.3d at 1114 (internal citations omitted). The Court authorized discovery in this case because there is a factual dispute about whether the State Department conducted such a search. Indeed, the State Department conceded that the prior search it conducted was inadequate. Hr'g Tr., 96:19-22, July 18, 2016. In the usual case, FOIA authorizes the Court to grant very limited relief: the Court can enjoin the agency from withholding records and order the production of records that are improperly withheld. 5 U.S.C. § 552(a)(4)(B). However, were the Court to conclude that the State Department violated FOIA's intent and purpose, "'FOIA imposes no limits on the courts' equitable powers in enforcing its terms.'" *Payne Enterprises, Inc. v. United States*,

837 F.2d 486, 494 (D.C. Cir. 1988)(quoting *Renegotiation Bd. V. Bannercraft Clothing Co.*, 415 U.S. 1, 19-20 (1974)).

Judicial Watch argues that deposing Secretary Clinton is necessary to complete the record in this case. Pl.'s Reply, ECF No. 106 at 1. Judicial Watch states that it needs to explore the following issues: (1) the purpose for the clintonemail.com system; (2) why the system was used even though at times it interfered with her job; (3) Secretary Clinton's claim over the records on the clintonemail.com system; (4) Secretary Clinton's inventorying of records upon the completion of her tenure as Secretary; (5) why clintonemail.com was non-archival; and (6) details about Mr. Pagliano's role in creating and operating clintonemail.com. Pl.'s Mot., ECF No. 97 at 3-12. Judicial Watch recognizes the significance of asking a former agency head to sit for a deposition but argues that, based on the record developed thus far, her testimony is crucial to understanding how and why the system was created and operated. *Id.* at 12.

Both Secretary Clinton and the State Department oppose Judicial Watch's motion. Secretary Clinton argues that "Judicial Watch has not demonstrated a need to depose" her because the six issues about which Judicial Watch seeks to question her have either already been answered in the extensive record related to the clintonemail.com system, or are irrelevant to the limited scope of discovery authorized by the Court, which was to

11

"resolve a dispute of fact regarding whether" there was a
deliberate intent to thwart FOIA. Clinton Opp'n, ECF No. 102 at
7-16.[8] As to the latter point, Secretary Clinton contends that
"there is no evidence that the purpose of the clintonemail.com
system was to thwart FOIA." *Id*. at 8. At oral argument, counsel
for Secretary Clinton also pointed to FBI Director Comey's July
7, 2016 testimony before the House Committee on Oversight and
Government Reform in which he stated that the FBI asked
Secretary Clinton why she set up the email system as she did and
that her answer was "convenience." Hr'g Tr. at 95:15-22, July
18, 2016, referring to Clinton Opp'n, ECF No. 102-2, Exhibit C
at 74.

---

[8] Secretary Clinton makes two additional arguments: (1) the
deposition would be futile because the ultimate relief Judicial
Watch seeks – that the clintonemail.com account be searched by
the State Department or Secretary Clinton – is not possible
because Secretary Clinton does not have possession or control of
the equipment; and (2) that the Court reconsider its prior
ruling granting discovery on the grounds that the Court lacks
jurisdiction to order discovery in this case because Secretary
Clinton's private email server equipment was not in the
possession or control of the State Department when Judicial
Watch submitted its FOIA request. *Id*. at 15-20. With regard to
the first argument, regardless of any ultimate relief, the
underlying question before the Court – and the reason the Court
ordered discovery – is to enable the Court to decide, as a
matter of law, whether the Government conducted an adequate
search in response to Judicial Watch's FOIA request. With regard
to the second, the Court declines to reconsider its prior ruling
for the reasons articulated in that Opinion. *See* Mem. Op., ECF
No. 73.

Arguing that her deposition would be "entirely cumulative and unnecessary" due to the discovery already conducted in this case, as well as her testimony before the Benghazi Committee, Secretary Clinton urges the Court to be wary of Judicial Watch's request to depose a former cabinet official because "[l]itigants are not typically permitted to depose high-ranking government officials if the requested information can be obtained elsewhere, including from lower-ranking government officials." Clinton Opp'n, ECF No. 102 at 17-18. Secretary Clinton proposes that, should the Court decide that further discovery is necessary, she be allowed to provide the information in writing rather than "[r]equiring her to sit for a deposition for the purpose of repeating her prior statements or stating that she has no knowledge of certain topics." *Id.* n.6. The State Department opposes the motion on the grounds that "the discovery that Plaintiff itself designed has not revealed a shred of evidence indicating an intent to thwart FOIA" by Secretary Clinton or the State Department, making additional discovery futile or moot. Def.'s Opp'n, ECF No. 103 at 2, 8-19.

Judicial Watch responds that although there may be an extensive record relating to the clintonemail.com system, none of the investigations "focused on whether the creation and use of the system was intended to deliberately thwart FOIA or otherwise prevent[] the State Department from complying with its

FOIA and federal recordkeeping obligations" and thus the record is incomplete. Pl.'s Reply, ECF No. 106 at 2-3. At oral argument, Judicial Watch disagreed that discovery had not resulted in any evidence that the email system was created to thwart FOIA. Hr'g Tr. 21:22 – 22:1, July 18, 2016.

As an initial matter, the Court notes that the parties disagree about whether the discovery conducted to date has resulted in any evidence of an intent to thwart FOIA. That issue, however, is not before the Court at this time for resolution. Therefore, the Court rejects Secretary Clinton's and the State Department's arguments that there is no basis for additional discovery because there is no evidence of an intent to thwart FOIA.

The Court is persuaded that Secretary Clinton's testimony is necessary to enable her to explain on the record the purpose for the creation and operation of the clintonemail.com system for State Department business. The Court recognizes that Secretary Clinton has stated publicly and to the FBI that she used one email account for convenience. *See*, *e.g.*, Clinton Opp'n ECF No. 102-4 at 2 ("When Clinton got to the Department, she opted to use her personal email account as a matter of convenience."); Clinton Opp'n ECF No. 102-3 at 4 (FBI Director Comey testifying that Secretary Clinton was asked "why she set up the email system as she did in the first place" and the

14

answer was "convenience . . . that it was already there"). However, Secretary Clinton has not answered questions relevant to the limited scope of discovery authorized in this case -- the purpose for "the creation and operation of the clintonemail.com system for State Department business." The scope of discovery authorized by the Court is limited, but it is certainly broader than the single question of why Secretary Clinton used her personal email account when she arrived at the State Department.

Moreover, her closest aides at the State Department, in their depositions in this case, did not have personal knowledge of Secretary Clinton's purpose in using the system. Ms. Abedin testified as follows: In response to the question, "Do you know why Secretary Clinton did not want to use a state-issued e-mail account for her state-related work?", Ms. Abedin responded, "[F]rom my understanding, I just saw it as continue [sic] doing what she was doing before she arrived at the State Department." Abedin Dep. at 38:11-21. In response to the question, "But you didn't actually have conversations with the secretary about her wanting to continue [her practice of using a personal account] at the State Department?", Ms. Abedin responded, "I can only tell you what I observed, which is her continuing to use one device and one e-mail account." Abedin Dep. at 72:21-73:1.

Ms. Mills testified as follows: In response to the question, "Did you discuss with [Secretary Clinton] with respect

to what e-mail she was going to use as Secretary of State for the next four years?", Ms. Mills responded, "So the Secretary has spoken about the fact that she had made a determination that she would use her personal account, and that is exactly what she did." Mills Dep. at 44:14-20. Ms. Mills elaborated as follows, "So Secretary Clinton continued a practice that she was using of [sic] her personal e-mail. And I don't know that I could articulate that there was a specific discussion as opposed to her continuation of a practice she had been using when she was a Senator." Mills Dep. at 45:7-12. In response to the question, "[W]hy did Secretary Clinton choose not to have a State.gov e-mail account?", Ms. Mills responded, "I don't know that I can speak for her. I think she's spoken for this herself and said that part of what she was seeking was obviously the convenience of being able to use a common device, and so that's what she did." Mills Dep. at 172:20-173:4

Because Secretary Clinton has not answered for the record and under oath questions relevant to the limited scope of discovery authorized in this case -- the purpose for "the creation and operation of the clintonemail.com system for State Department business" -- and because her closest aides at the State Department do not have personal knowledge of her purpose in using the system, the Court will permit testimony from

16

Secretary Clinton consistent with the limited scope of discovery.

### D. Judicial Watch May Serve Interrogatories on Secretary Clinton

Because Secretary Clinton is a former cabinet level official, the Court must determine whether, in response to Judicial Watch's request, she should be deposed. Pursuant to the "apex doctrine," Judicial Watch must demonstrate that there are "[e]xceptional circumstances justifying the deposition——for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Federal Deposit Insurance Co.*, 2015 WL 5602342, at *3-*4 (internal citations omitted). Clearly, and as her counsel acknowledged at oral argument, Secretary Clinton has unique first-hand knowledge of the purpose for the creation and operation of the clintonemail.com system for State Department business. Hr'g Tr. at 82:10-14, July 18, 2016. Counsel proposes that, should the Court determine that additional discovery is necessary, Secretary Clinton be allowed to provide the information in writing rather than sit for a deposition. Clinton Opp'n, ECF No. 102 at 18. Judicial Watch argues that the "exceptional circumstances" justification has been satisfied because Secretary Clinton used a non-governmental system to

conduct official government business. Pl.'s Reply, ECF No. 107
at 5-6. In response to the Court's questions regarding whether
interrogatories would be an appropriate, less burdensome
alternative to a deposition pursuant to the apex doctrine,
Judicial Watch responded that interrogatories would not be
"appropriate in this case because of the follow-up questions."
Hr'g Tr. at 46: 16-18, July 18, 2016. Judicial Watch did,
however, acknowledge that questions regarding Secretary
Clinton's motivation for using the system throughout her tenure
as Secretary of State could be responded to through
interrogatories. *Id*. at 49: 13-17. Judicial Watch also stated
that the deposition would be no longer than three hours, "but it
may be even shorter than that." *Id*. at 49: 21-23.

Judicial Watch has failed to demonstrate that it cannot
obtain the discovery it seeks through other, less burdensome or
intrusive means such as interrogatories. First, Judicial Watch
has acknowledged that it can obtain some of the discovery it
seeks from Secretary Clinton through interrogatories. Second,
Judicial Watch's argument that a deposition is preferable in
this case because of the ability to ask follow-up questions is
not persuasive. Given the extensive public record related to the
clintonemail.com system, a record which Judicial Watch has
acknowledged, Judicial Watch will be able to anticipate many
follow-up questions. For those follow-up questions that Judicial

Watch is unable to anticipate, it can move this Court for permission to serve additional interrogatories. Finally, because Judicial Watch seeks a deposition of three-hours or less, it likely has a very limited number of questions for Secretary Clinton.

During oral argument, the Court questioned whether the six issues Judicial Watch listed as its basis for needing additional discovery fell within the narrow scope of discovery permitted in this case and were not cumulative. Hr'g Tr. at 22–50, July 18, 2016. In granting Judicial Watch's request in part, the Court is not necessarily agreeing that all of the issues listed by Judicial Watch fall within the scope of the discovery the Court has authorized. The Court directs Judicial Watch to propound questions that are relevant to Secretary Clinton's unique first-hand knowledge of "the creation and operation of clintonemail.com for State Department business, as well as the State Department's approach and practice for processing FOIA requests that potentially implicated former Secretary Clinton's and Ms. Abedin's emails and State's processing of the FOIA request that is the subject of this action." Mem. Order, ECF No. 73 at 12. To the extent the parties are unable to resolve issues amongst themselves regarding the interrogatories, the Court will address and resolve objections in the normal course.

19

For all of these reasons, Judicial Watch is authorized to serve interrogatories on Secretary Clinton.

### E. No Additional Discovery of Mr. Finney is Necessary

Judicial Watch also seeks to depose Mr. Finney, a current State Department employee, who served as the Director of Office of Correspondence and Records of the Executive Secretariat ("S/ES-CRM") during Secretary Clinton's tenure. Pl.'s Mot., ECF No. 97 at 13. Mr. Finney had responsibility for day-to-day records management and research in response to FOIA requests. *Id.* Judicial Watch argues that deposing Mr. Finney is necessary to understand: (1) how Secretary Clinton's records were managed and how FOIA requests for Secretary Clinton's records were processed; and (2) "whether he knew about the clintonemail.com system, what efforts he made to find out what systems Secretary Clinton was using for her official emails, what he was told about the use of the unofficial system by Secretary Clinton and Ms. Abedin to conduct official government business, and, perhaps most significantly, what he was not told about the system." *Id.* at 13-15.

The State Department opposes Mr. Finney's deposition because: (1) Mr. Finney's knowledge was described in detail by the State Department's Rule 30(b)(6) deponent;[9] (2) Judicial

---

[9] The State Department's Rule 30(b)(6) designee is Mr. Finney's supervisor.

Watch conceded that the record in this case indicates that Mr.
Finney was not aware of the system and thus "it makes little
sense to imagine [Mr. Finney] could testify to 'how and why' he
did not know what he did not know"; and (3) it was Judicial
Watch's own strategic decision to propose a Rule 30(b)(6)
deposition and so it cannot now complain that it had to learn
what Mr. Finney knew "through the filter of" the Rule 30(b)(6)
witness. Def.'s Opp'n, ECF No. 103 at 19-22. Judicial Watch
responds that had it known Mr. Finney's role at the time, it
would have sought to depose him. Pl.'s Reply, ECF No. 107 at 7.
Judicial Watch also states that the State Department should have
identified Mr. Finney as a key witness, *id*., but did not raise
this point at oral argument. *See generally* Hr'g Tr., July 18,
2016. The State Department responds that "Judicial Watch [was]
on notice of Mr. Finney's existence and role long before it
compiled its list of proposed deponents in March 2016" as a
result of the OIG's January 2016 report regarding the
Department's processing of FOIA requests involving the Office of
the Secretary. Def.'s Surreply, ECF No. 110 at 6-7.

The Court approved a Rule 30(b)(6) deposition to provide
testimony "regarding the processing of FOIA requests, including
Plaintiff's FOIA request, for emails of Secretary Clinton and
Ms. Abedin both during Secretary Clinton's tenure as Secretary
of State and after." Mem. Order, ECF No. 73 at 13. Judicial

Watch's first reason for its request to depose Mr. Finney – to learn how Secretary Clinton's records were managed and how FOIA requests for Secretary Clinton's records were processed – was within the scope of the Rule 30(b)(6) deposition. With regard to Judicial Watch's second reason for deposing Mr. Finney, it has conceded that the record evidence supports the conclusion that Mr. Finney did not know about the clintonemail.com system until 2015, after Secretary Clinton left the State Department. Hr'g Tr. at 56:12-17, July 18, 2016. Consequently, there is little reason to engage in that line of questioning.

At oral argument, Judicial Watch made two primary arguments in support of deposing Mr. Finney. First,

> Mr. Finney **may** have [additional information] about the conversations he had with the [Information Technology] department when he saw Secretary Clinton's photo, using a BlackBerry, and then he inquired about whether or not she was using State Department—a State Department BlackBerry, State Department e-mail. You know, more conversations, more details specifically, exactly what he asked, what he was told, you know, how that conversation went.

Hr'g Tr. 52:10-17, July 18, 2016 (emphasis added). Second, it learned during discovery that either Mr. Finney or Mr. Bentel would have been the State Department staff person to approve Secretary Clinton's use of a private email and server. *Id.* 53:8-54:4.

With regard to the first argument, Judicial Watch is clearly speculating about conversations that may or may not have occurred. The Court declines to authorize additional discovery that amounts to a "fishing expedition." With regard to the second, the OIG concluded after investigation there was no evidence that Secretary Clinton requested or received formal "approval to conduct official business via a personal account on her private server." U.S. DEP'T OF STATE, OFFICE OF INSPECTOR GENERAL, ESP-16-03, OFFICE OF THE SECRETARY: EVALUATION OF EMAIL RECORDS MANAGEMENT AND CYBERSECURITY REQUIREMENTS at 37 (May 2016), https://oig.state.gov/system/files/esp-16-03.pdf ("STATE DEPARTMENT OFFICE OF INSPECTOR GENERAL REPORT"). Consequently, deposing Mr. Finney (or Mr. Bentel) on this topic is moot. Finally, the Court is persuaded that Judicial Watch was on notice of Mr. Finney's role and could have proposed deposing him in its original discovery proposal. For all of these reasons, Judicial Watch's request for permission to depose Mr. Finney is **DENIED**.

### F. Judicial Watch May Obtain Deposition Testimony from Mr. Bentel

Finally, Judicial Watch seeks to depose Mr. Bentel, who served as Director of S/ES-IRM during Secretary Clinton's tenure.[10] Pl.'s Mot., ECF No. 97 at 16. Mr. Bentel's office was

---

[10] Mr. Bentel retired in 2012. Def.'s Opp'n, ECF No. 103 at 22.

responsible for information technology for the Office of the Secretary. *Id.*

Judicial Watch argues that deposing Mr. Bentel is necessary because the record includes contradictory evidence about Mr. Bentel's knowledge of Secretary Clinton's private server and email practices. Pl.'s Mot., ECF No.97 at 16-18. The State Department responds that deposing Mr. Bentel is not necessary because there is no evidence to indicate that he will have more information about whether there was an effort to deliberately thwart FOIA or about Secretary Clinton's motivation for using a private server. Def.'s Opp'n, ECF No. 103 at 22; Hr'g Tr. 65: 19-23.

The Court is persuaded that Mr. Bentel should be deposed because the record in this case appears to contradict his sworn testimony before the Benghazi Committee. That testimony is relevant to the operation of the clintonemail.com system. Specifically, Mr. Bentel testified that he was not aware that Secretary Clinton's email account was housed on a private server until media reports in 2015. *See* SELECT COMMITTEE ON BENGHAZI, U.S. HOUSE OF REPRESENTATIVES, INTERVIEW OF EXECUTIVE SECRETARIAT DIRECTOR OF INFORMATION RESOURCES MANAGEMENT at 37 (June 30, 2015), http://askedandanswered-democrats.benghazi.house.gov/ transcripts/2015_06_30_SCB_INTERVIEW_EX_IRM_Director.pdf. However, several emails indicate Mr. Bentel knew about the

private server as early as 2009. For example, on March 17, 2009,
Mr. Bentel received an email about "Secretary Residential
Installation Hotwash" which identified the location of an
"unclassified partner system" and "server" in the "basement
telephone closet." Pl.'s Mot., ECF No. 97-2, Doc. A. On December
17, 2010, an email was sent to SES-IRM_Tech and SES-IRM_FO_Mgt
about problems with the clintonemail.com server. *Id.*, Doc. D at
25. Presumably, as the Director of S/ES-IRM, Mr. Bentel would
have been included in one or both of those group emails.

The Court relies on three other facts in authorizing the
deposition of Mr. Bentel. First, Mr. Bentel declined to assist
the Rule 30(b)(6) deponent in preparation for her deposition.
Def.'s Opp'n, ECF No. 103 at 23. Second, the OIG May 2016 report
found that Mr. Bentel told employees in his office that
Secretary Clinton's email arrangement had been approved by the
State Department's legal staff and also instructed his
subordinates not to discuss the Secretary's email again:

> Two staff in S/ES-IRM reported to OIG that, in
> late 2010, they each discussed their concerns
> about Secretary Clinton's use of a personal
> email account in separate meetings with the
> then-Director of S/ES-IRM. In one meeting, one
> staff member raised concerns that information
> sent and received on Secretary Clinton's
> account could contain Federal records that
> needed to be preserved in order to satisfy
> Federal recordkeeping requirements. According
> to the staff member, the Director stated that
> the Secretary's personal system had been
> reviewed and approved by Department legal

> staff and that the matter was not to be discussed any further. . . . According to the other S/ES-IRM staff member who raised concerns about the server, the Director stated that the mission of S/ES-IRM is to support the Secretary and instructed the staff never to speak of the Secretary's personal email system again.

STATE DEPARTMENT OFFICE OF INSPECTOR GENERAL REPORT at 40,

https://oig.state.gov/system/files/esp-16-03.pdf.

Finally in August 2011, Mr. Bentel informed a State Department staff person that anything sent to the Secretary on her state.gov Blackberry address "would be subject to FOIA searches." Pl.'s Mot., ECF No. 97-2, Doc. C. at 8.

In sum, the record suggests Mr. Bentel has knowledge of the operation of the clintonemail.com system, which is within the scope of discovery authorized by the Court. Because Mr. Bentel declined to assist the Rule 30(b)(6) deponent in preparation for her deposition, as well as the other reasons discussed above, the Court **GRANTS** Judicial Watch's request to depose Mr. Bentel.

### G. The Court Declines to Defer Ruling on Judicial Watch's Discovery Motion, but Requires the State Department to Release all Remaining Documents Responsive to Judicial Watch's Request by a Date Certain

In the alternative, the State Department had proposed that the Court stay its decision on additional discovery until the State Department receives and searches the additional work-related documents the FBI recovered. Def.'s Opp'n, ECF No. 103 at 24. At oral argument, Judicial Watch objected to this proposal

26

primarily on the grounds that it was unclear how long it would take the State Department to process the documents received from the FBI, and also because regardless of what additional documents are released, the additional discovery Judicial Watch has requested would still be necessary to complete the record. Hr'g Tr. at 90:4 – 91:2, July 18, 2016.

The Court is not persuaded that it is necessary to defer ruling on the pending discovery motion, and, as discussed *supra*, has concluded that some additional discovery is warranted. The Court is of the opinion that Judicial Watch should have the opportunity to review the remaining responsive documents to enable it, pursuant to the limited scope of discovery authorized in this case, to prepare appropriate interrogatories and deposition questions. The State Department has informed the Court that it anticipates completing its "initial search" of the remaining materials it received from the FBI by no later than August 26, 2016. Def.'s Status Report, ECF No. 122 at 3. Because the State Department has not indicated a date certain by which it will complete processing these documents and release them to Judicial Watch, and because the State Department has committed to prioritizing this FOIA request, Hr'g Tr. at 16: 8-11, July 18, 2016, the Court will order the State Department to release all remaining documents responsive to Judicial Watch's FOIA request by no later than September 30, 2016. Judicial Watch may

27

then serve interrogatories on Secretary Clinton by no later than October 14, 2016. Secretary Clinton shall respond by no later than thirty days thereafter. Mr. Bentel may be deposed by no later than October 31, 2016.

## III. Conclusion

For the reasons discussed above, Judicial Watch's Motion is **GRANTED IN PART** and **DENIED IN PART**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Emmet G. Sullivan**
**United States District Court**
**August 19, 2016**