IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-cv-1363 (EGS) |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION TO COMPEL FORMER SECRETARY OF STATE
HILLARY RODHAM CLINTON TO ANSWER INTERROGATORIES**

Plaintiff Judicial Watch, Inc., by counsel and pursuant to Rules 33 and 37 of the Federal Rules of Civil Procedure, respectfully moves to compel former Secretary of State Hillary Rodham Clinton to answer the three interrogatories she refuses to answer. Secretary Clinton opposes this motion; the State Department reserves its right to oppose upon reviewing the motion. As grounds therefor, Plaintiff states as follows:

**STATEMENT OF POINTS AND AUTHORITIES**

**I.    Introduction.**

Former Secretary of State Hillary Rodham Clinton refuses to answer three interrogatories. She also fails to justify her refusal with nothing more than bare-bone objections to each. Because she has not and cannot demonstrate that her refusal to answer the interrogatories is proper, Secretary Clinton should be required to answer them promptly.

**II.    Background.**

The Court granted Plaintiff's request to seek discovery from Secretary Clinton. Specifically, the Court authorized Plaintiff "to propound questions that are relevant to Secretary

Clinton's unique firsthand knowledge of the creation and operation of clintonemail.com for State Department business, as well as the State Department's approach and practice for processing FOIA requests that potentially implicated former Secretary Clinton's and Ms. Abedin's emails and State's processing of the FOIA request that is the subject of this action." Memorandum Opinion (Docket No. 124) at 19 (internal citation omitted).

Plaintiff subsequently propounded 25 interrogatories on Secretary Clinton. On October 13, 2016, Secretary Clinton responded to them. In doing so, she refused to answer Interrogatories 1, 14, and 24. Clinton's Response (Docket No. 137-1). Secretary Clinton refuses to answer Interrogatory 1 because she believes it is outside the scope of permitted discovery. *Id*. at 4-5. She refuses to answer Interrogatory 14 because she believes it concerns "cybersecurity issues" and is outside the scope of permitted discovery. *Id*. at 10-11. Secretary Clinton refuses to answer Interrogatory 24 because she believes it calls for information protected by the attorney-client privilege. *Id*. at 18.

After reviewing her response, Plaintiff informed Secretary Clinton's counsel that it intended to move to compel Secretary Clinton to answer the three interrogatories she refused to answer. On October 28, 2016, Secretary Clinton's counsel stated that Secretary Clinton opposed Plaintiff's motion.

**III.   Argument.**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, "[t]he grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4). In addition, the party objecting to the interrogatory "bears the burden of 'show[ing] why discovery should not be permitted.'" *Convertino v. U.S. Department of Justice*, 565 F. Supp. 2d 10, 12-13 (D.D.C. 2008) (quoting *Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 299, 302 (D.D.C. 2000)).

Although she objects to the three interrogatories, Secretary Clinton fails to provide sufficient reasons for refusing to answer them, and the limited reasons she provides do not warrant sustaining her objections.

### A. Interrogatory 1.

Interrogatory 1 asks, "Describe the creation of the clintonemail.com system, including who decided to create the system, the date it was decided to create the system, why it was created, who set it up, and when it became operational." Clinton's Response at 4. Secretary Clinton objects and asserts that the interrogatory is outside the scope of permitted discovery. *Id*. at 4-5. However, the creation of the clintonemail.com system is squarely within the scope of permitted discovery.[1] Understanding the basic facts surrounding the creation of the system is an integral part of understanding how and why it came to be used for State Department business. To date, no witness has testified about these facts, and the Court specifically authorized interrogatories to enable Plaintiff to gather this information. Secretary Clinton's refusal to answer the interrogatory is therefore misplaced.

Secretary Clinton also asserts that Interrogatory 2 addresses the creation of the clintonemail.com system. *Id*. at 5. However, Interrogatory 2 clearly asks about "the creation of [Secretary Clinton's] clintonemail.com email account." *Id*. In other words, Interrogatory 2 only addresses the creation of Secretary Clinton's account on the system, not the system itself. Secretary Clinton should be compelled to answer Interrogatory 1.

---

[1]   The State Department did not object to this question as being outside the scope of permitted discovery.  Defendant's Objections at 2.

## B.     Interrogatory 14.

Interrogatory 14 asks:

On March 6, 2009, Assistant Secretary of State for Diplomatic Security Eric J. Boswell wrote in an Information Memo to your Chief of Staff, Cheryl Mills, that he "cannot stress too strongly, however, that any unclassified BlackBerry is highly vulnerable in any setting to remotely and covertly monitoring conversations, retrieving email, and exploiting calendars."  A March 11, 2009 email states that, in a management meeting with the assistant secretaries, you approached Assistant Secretary Boswell and mentioned that you had read the "IM" and that you "get it."  Did you review the March 6, 2009 Information Memo, and, if so, why did you continue using an unclassified BlackBerry to access your clintonemail.com email account to conduct official State Department business?

*Id*. at 10-11.  Secretary Clinton objects and asserts that the interrogatory asks about "cybersecurity issues" and is therefore outside the scope of permitted discovery.  *Id*. at 11.  Interrogatory 14 does not concern "cybersecurity issues."  It asks whether Secretary Clinton read a memorandum about the general use of unapproved or unclassified Blackberries, and, if she did read the memorandum, why did she continue using an unapproved or unclassified Blackberry – the device by which accessed the clintonemail.com account she used to conduct official government business.  A yes or no answer to whether she read the memorandum will not reveal any information the parties' agreed-upon scope sought to avoid.  Similarly, if the answer is yes, Secretary Clinton's explanation as to why, after reading the memorandum, she continued to access her clintonemail.com account through her Blackberry also will not reveal any information the parties' agreed-upon scope sought to avoid.  The interrogatory clearly seeks information squarely within the scope of permitted discovery.  Secretary Clinton should be compelled to answer Interrogatory 14.

### C.    Interrogatory 24.

Interrogatory 24 asks:

> During your October 22, 2015 appearance before the U.S. House of Representatives Select Committee on Benghazi, you testified that 90 to 95 percent of your emails "were in the State's system" and "if they wanted to see them, they would certainly have been able to do so." Identify the basis for this statement, including all facts on which you relied in support of the statement, how and when you became aware of these facts, and, if you were made aware of these facts by or through another person, identify the person who made you aware of these facts.

*Id*. at 18.  Secretary Clinton objects and asserts that the interrogatory asks for information protected by the attorney-client privilege.  *Id*.

The attorney-client privilege only "protects confidential communications between clients and their attorneys made for the purpose of securing legal advice or services."  *Tax Analysts v. Internal Revenue System*, 117 F.3d 607, 618 (D.C. Cir. 1997).  In addition, "[i]t is not sufficient to show merely that the communication was between client and attorney."  *Federal Trade Commission v. Boehringer Ingelheim Pharmaceuticals., Inc.*, 2016 U.S. Dist. LEXIS 131862, *29 (D.D.C. Sept. 27, 2016).  The party claiming the privilege must demonstrate that "one of the significant purposes of the communication was to obtain or give legal advice."  *Id*. at *29-30.

In addition, a communication from an attorney to a client is only protected if it "rest[s] on confidential information obtained from the client."  *Upjohn Company v. United States*, 449 U.S. 383, 395-96 (1981).  "[P]urely factual exchanges between attorney and client merit protection when those facts are provided to the attorney at his request for the purpose of enabling him to provide legal advice."  *Boehringer*, 2016 U.S. Dist. LEXIS 131862, *29.  However, if an attorney "conveys to his client facts acquired from other persons or sources, those facts are not privileged."  *Brinton v. U.S. Department of State*, 636 F.2d 600, 604 (D.C. Cir. 1980).

Interrogatory 24 does not seek any factual information Secretary Clinton may have provided to her attorneys in confidence for purposes of obtaining legal advice. Nor does it seek any advice Secretary Clinton's attorneys may have provided the secretary that would reveal facts she provided them in confidence. The interrogatory only seeks the factual basis for a specific representation Secretary Clinton made to Congress. It is irrelevant whether Secretary Clinton told her attorneys about the factual basis for this representation, either for purposes of obtaining legal advice or for some other purpose, because Plaintiff has not asked about any such communications. As a result, the attorney client privilege does not apply.

To the extent Secretary Clinton might claim that her attorneys provided her with the factual basis for the representation she made to Congress, she has made no attempt to demonstrate how her attorneys obtained this information. She plainly has not demonstrated that her attorneys obtained the information from her. Even if Secretary Clinton provided the information to her attorneys, the attorney-client privilege does not prevent its disclosure, it only protects disclosure of the communication with the attorneys. It does not prevent disclosure of the underlying facts. If the secretary's attorneys obtained the information from third parties, such as the State Department, or from their own efforts or analysis, it is not a fact conveyed in confidence from a client to an attorney for purposes of seeking legal advice. Because Secretary Clinton has failed to provide any such information to justify her assertion of the attorney client privilege, she should be compelled to answer Interrogatory 24.

## IV.  Conclusion.

Plaintiff respectfully requests the Court compel Secretary Clinton to answer the three interrogatories she refuses to answer.

Dated:  November 3, 2016					Respectfully submitted,

							/s/ Michael Bekesha
							Michael Bekesha
							D.C. Bar No. 995749
							JUDICIAL WATCH, INC.
							425 Third Street S.W., Suite 800
							Washington, DC 20024
							(202) 646-5172

							*Counsel for Plaintiff Judicial Watch, Inc.*

**Certification**

I hereby certify that Plaintiff has in good faith conferred with former Secretary of State Hillary Rodham Clinton and the U.S. Department of State in an effort to obtain Secretary Clinton's answers to the three interrogatories she refuses to answer without court action.

/s/  Michael Bekesha