**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JUDICIAL WATCH, INC.,

Plaintiff,

v.

U.S. DEPARTMENT OF STATE,

Defendant.

Civil Action No.: 13-cv-1363 (EGS)

**NON-PARTY DEPONENT CHERYL MILLS' OPPOSITION TO JUDICIAL WATCH'S**
**MOTION TO UNSEAL AUDIOVISUAL RECORDINGS OF ALL DEPOSITIONS**

In its motion, Judicial Watch mischaracterizes both the facts regarding Ms. Mills' original

motion for relief as well as the law the controlling law.  The fundamental premise of Judicial

Watch's motion is that the only reason the deposition recordings were maintained under seal was

the potential use of the depositions during the campaign.  In making this argument, Judicial Watch

ignores the Court's prior order, in which it balanced the public's right to know about Secretary

Clinton's email practices with its power under Rule 26(c) to protect a person from "annoyance,

embarrassment, oppression, or undue burden or expense."  Judicial Watch also ignores Ms. Mills'

original motion.  Potential political manipulation of Ms. Mills' recording was but one of the

reasons motivating the initial request for relief.  On behalf of Ms. Mills, we were just as concerned

about protecting the privacy of our client, a private citizen and non-party to this case.  Release of

the recordings would now—just as it would have in May—cause Ms. Mills undue burden.  And

this court has already found that the common law right to inspect judicial records under which

Judicial Watch now petitions does not encompass deposition recordings.  As such, the Court's order of May 26, 2016 continues to be salient.

## ARGUMENT

### A.  Release of the deposition recording would cause Ms. Mills undue burden

This Court has already decided that a protective order was justified in this case, and nothing in Judicial Watch's recent motion undermines the Court's reasoning.  Judicial Watch contends that we requested the Order only for political protection. That is factually incorrect.[1]  But the relevant inquiry is what the Court ordered.  In granting the relief requested, the Court ordered, in its entirety:

> MINUTE ORDER granting non-party deponent Cheryl Mills' Motion to Seal all audiovisual copies of her forthcoming deposition. Rule 26 authorizes the Court to protect "a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The depositions permitted by the Court are limited in scope, but relate to former Secretary of State Hillary Clinton's email practices during her tenure at the State Department. The public has a right to know details related to the creation, purpose and use of the clintonemail.com system. Thus, the transcripts of all depositions taken in this case will be publicly available. It is therefore unnecessary to also make the audiovisual recording of Ms. Mills' deposition public. To avoid unnecessary briefing by the parties and non-parties going forward, the Court sua sponte orders that all audiovisual copies of depositions taken in this case shall be sealed until further order of the Court. Upon completion of each deposition, the parties shall hand deliver to Judge Sullivan's chambers two copies of the final deposition transcripts and one audiovisual copy of each deposition.  (Minute Order, May 26, 2016.)

The Court did not premise its relief on a narrow principle of offering protection from political manipulation of the recordings.  Indeed, the Order does not include any mention of politics.

---

[1]      From the beginning, we, as Ms. Mills' counsel, have argued that the court should permit neither the "unfair and misleading" exploitation of Ms. Mills' voice and image, nor the invasion of her "personal privacy."  (Mot. Non-Party Deponent Cheryl Mills ("Mills Mot."), 1, 3, May 25, 2016, ECF 79.)  Judicial Watch is correct that the potential use of Ms. Mills' image for political purposes in the then-ongoing Presidential campaign was <u>one</u> of the reasons for which we sought the protective order.  But it was not, as Judicial Watch states, the "sole reason."  (*See* Pl.'s Mot. to Unseal Audiovisual Recordings ("Pl.'s Mot."), 2, Dec. 5, 2016, ECF 153.)

Instead, the Court grounded the Order in the broad language of Rule 26(c) to protect non-party Ms. Mills from undue burden, annoyance, embarrassment, or oppression.  And now, just as before, the public release of the recordings would cause undue burden on Ms. Mills—political and otherwise—and the Order continues to offer proper privacy protections to non-parties like Ms. Mills.[2]  As noted in the original motion, courts have barred the release of deposition recordings because they are highly susceptible to manipulation and easily can be cut and spliced into "sound-bites" robbed of important context.  *See, e.g., Lopez v. CSX Transp., Inc.*, No. CIV.A. 3:14-257, 2015 WL 3756343, at *5-6 (W.D. Pa. June 16, 2015); *Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007); *Felling v. Knight*, No. IP01-0571-C-T/K, 2001 WL 1782360, at *3 (S.D. Ind. Dec. 21, 2001); *Paisley Park Enterprises, Inc. v. Uptown Prods.*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999).

**B.  The common law right to inspect judicial records does not encompass deposition recordings**

Judicial Watch's characterization of the common law right to inspect judicial records is incomplete and misleading.  There exists a common law right to inspect written and recorded judicial records.  *In re Application of Nat'l Broad. Co., Inc.*, 653 F.2d 609, 613 (D.C. Cir. 1981).  "It is uncontested, however, that the right to inspect and copy judicial records is not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).  To determine which records to make publicly available, trial courts use their discretion to weigh the interests advanced by the parties

---

[2]       It is worth noting that the single case Judicial Watch cites in the good cause section of its motion found that the movant had established good cause based upon the privacy concerns that came with publication of discovery materials.  *See Burgess v. Town of Wallingford*, No. 3:11-CV-1129 CSH, 2012 WL 4344194, at *12-13 (D. Conn. Sept. 21, 2012) (ordering the removal of personally identifiable information from deposition transcripts that the plaintiff had published on his website).  And while we agree with Judicial Watch that *Burgess* employs a good cause standard for <u>issuing</u> a protective order, we find no portion of the case which stands for the proposition that the original movant must meet that burden at every point subsequent to the court entering the order, as Judicial Watch's motion suggests.

"in light of the public interest and duty of the courts."  *Id.* at 599, 602.  But this Court has found that the videotape recordings of depositions of witnesses are not encompassed within the common law right.  *Application of Am. Broad. Cos., Inc.*, 537 F. Supp. 1168, 1171-72 (D.D.C. 1982).

*American Broadcasting Companies* is on all fours with the case here, yet Judicial Watch's motion omits any mention of it.  In that case, Jodie Foster sat for a deposition in the criminal proceedings of would-be Presidential assassin John Hinckley.  537 F. Supp. at 1170.  Ms. Foster petitioned the court to seal her deposition recording after it was played to the factfinder.  *Id.*  While neither party objected, the major television networks petitioned the court under the same common law right Judicial Watch cites here.  *See id.*  The recording in question contained only testimonial evidence— "a description by a witness of events within her knowledge"—rather than real evidence of the activities of a criminal defendant.  *Id.* at 1171.  In its opinion, the court stressed that there had never been any right to record the live testimony of witnesses in court, nor even to have access to the recordings of such witnesses that are made by court reporters to supplement their notes.  *Id.* ("[I]t it logical that . . . taped testimony should be treated in the same fashion as is the testimony of any live witness at trial—namely, the testimony is displayed to the jury, which can hear and view it but not record it.").  The court found these distinctions to be of "fundamental importance," and in so finding, ruled that the common law right did not encompass the tape.  *Id.* at 1171-72.  The recording of Ms. Mills' deposition also contains only her testimonial evidence provided as a witness.  As it stands after the May 26 Order, the public is in the exact same position as it would have been had Ms. Mills testified live before a factfinder.  As such, the recording of her deposition falls outside the common law right of inspection.

But even if the tape were within the common law right, this case would not pass the balancing test established in *Nixon* and its progeny.  The single case Judicial Watch cites in support

of its common law argument—*In re Application of National Broadcasting Company*—employs this balancing test, 653 F. 2d at 613-17, but it is so factually distinct from the instant case as to make it nearly inapplicable.  In that case, the D.C. Circuit relied upon four factors in reaching its decision to release the Abscam sting tapes: (1) the tapes had been admitted into evidence and played in open court to the jury; (2) members of the press and public had seen the recordings during the court proceedings; (3) the tapes contained only admissible evidence on which the jury had relied in convicting the defendants; and (4) the trial had been about a public figure charged with, and convicted of, betraying the public's trust.  *Id.* at 614.  None of those factors are present here. Ms. Mills' recording has been provided only to the parties and the court; neither Ms. Mills nor her counsel have seen it.  As is evident from the transcript, the recording is filled with information that we—and the Department of State—objected to as inadmissible or outside the scope of permissible discovery in this case.  And most importantly, Ms. Mills has neither been charged with, or accused of, any wrongdoing.  Ms. Mills is not a party to this case, which is significant to this analysis.  The D.C. Circuit recognized as much when it remanded the case to the trial court to release the tapes in *National Broadcasting Company*, by including instructions to limit the reference of third-parties.  *Id.* at 620.

The public interest in information about this case has been well-satisfied by the Court's May 26 Order.  From the very first motion, Ms. Mills has not opposed the public release of her transcript.  Judicial Watch published Ms. Mills' unabridged transcript on its website four days after the deposition had been taken;[3] the public can also access the full transcript on the public docket

---

[3]      JW v. State Mills Deposition 01363, uploaded May 31, 2016, http://www.judicialwatch.org/document-archive/jw-v-state-mills-deposition-01363/.

of this case.[4]   Numerous media outlets covered the release of her transcript,[5] and some even published portions of the transcript on their online platforms.[6]   One group went so far as to produce a dramatic reenactment of portions of Ms. Mills' deposition—and the depositions of several witnesses in this case—after raising private donations online.[7]   In its motion, Judicial Watch asserts that the public release of  Ms. Mills' deposition video will "not only allow the public to better understand Secretary Clinton's email practices, it will also provide the public with a more complete picture of the discovery taken in this case."  (*See* Pl.'s Mot. at 4.)  It will not.  The release of her recording will serve only to further sensationalize a topic that has already been exhaustively covered for almost two years.  *See Nixon*, 435 U.S. at 603 (allowing all records to be publicly released without the exercise of discretion could make the court a partner in "gratify[ing] private spite or promot[ing] public scandal") (internal citations and quotations omitted).

## CONCLUSION

The discovery in this case has provided the public with information, and in so doing, met the goals established by this Court.  The release of Ms. Mills' recording would serve only to subject her to undue burden without making the public any better informed.  And this Court has already found that depositions recordings of third parties are not within the common law right under which

---

[4]        Tr. of Cheryl D. Mills, Aug. 23, 2016, ECF 126.

[5]        *E.g.*, Josh Gerstein, *Lawyers Clashed at Clinton Aide's Deposition*, <u>Politico</u>, May 31, 2015, 5:11 P.M., http://www.politico.com/story/2016/05/cheryl-mills-hillary-clinton-deposition-223753.

[6]        Cheryl Mills Deposition, <u>The New York Times</u>, May 31, 2016 http://www.nytimes.com/interactive/2016/05/31/us/document-cheryl-mills-deposition.html?_r=0.

[7]        Phelim McAleer, *Clinton Emails on Film*, Indiegogo, https://www.indiegogo.com/projects/clinton-emails-on-film-video#/.

Judicial Watch seeks the release of Ms. Mills' recording.  For these reasons, we respectfully ask the Court to deny Judicial Watch's motion and keep in place its Order of May 26, 2016.


Dated: December 19, 2016                     Respectfully submitted,

                                             */s/ Beth A. Wilkinson*
                                             Beth A. Wilkinson (D.C. Bar No. 462561)
                                             Alexandra M. Walsh (D.C. Bar No. 490484)
                                             WILKINSON WALSH + ESKOVITZ LLP
                                             1900 M Street NW, Suite 800
                                             Washington, D.C. 20036
                                             Telephone: (202) 847-4000
                                             Facsimile: (202) 847-4005
                                             bwilkinson@wilkinsonwalsh.com
                                             awalsh@wilkinsonwalsh.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 19, 2016, the foregoing opposition were served upon the parties in this case via the Court's electronic filing system and are available for viewing and downloading from the ECF system.

_/s/ Beth A. Wilkinson_
Counsel for Cheryl D. Mills